Filed 1/27/15  Galicia v. Spencer CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ARACELI GALICIA et al., | D063758 & D064441 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 37-2012-00055460-CU-CR-NC) |
| MARY SPENCER et al., | |
| Defendants and Respondents. | |

CONSOLIDATED APPEALS from orders of the Superior Court of San Diego County, Timothy M. Casserly, Judge.  Affirmed.

William J. Brown and John T. Richards for Plaintiffs and Appellants.

Lewis, Brisbois, Bisgaard & Smith, Julie R. Dann and Marilyn R. Moriarty for Defendants and Respondents.

I.

INTRODUCTION

Plaintiffs Araceli Galicia and her parents and siblings sued Mary Spencer, M.D., and Palomar Health (Palomar) (collectively respondents) based on Dr. Spencer's forensic

medical examination of Araceli at a Palomar facility after Araceli accused her older brother, Luis, of raping her.[1]  Plaintiffs appeal from an order granting respondents' special motion to strike their complaint under the anti-SLAPP statute[2] (Code Civ. Proc., § 425.16).[3]  They raise a number of overlapping arguments on appeal in which they essentially contend that (1) the trial court erred by applying state law immunities to Araceli's cause of action under 42 United States Code section 1983;[4] (2) respondents' "invasive physical mistreatment" of Araceli violated "familial constitutional rights"; (3) Araceli's declaration was sufficient to show a probability of prevailing on her section 1983 cause of action; and (4) the court erroneously sustained evidentiary objections to Araceli's declaration.  In their second appeal, plaintiffs appeal from the order awarding respondents attorney fees for prevailing on their special motion to strike and contend that the court abused its discretion by awarding fees in an excessive amount.  We affirm both appealed orders.

---

[1]     Plaintiffs also named the County of San Diego and related parties as respondents in their complaint, based on the county defendants' involvement in a criminal case against Luis.  However, Dr. Spencer and Palomar are the only defendants who are parties to this appeal.

[2]     " 'SLAPP is an acronym for "strategic lawsuit against public participation." ' " (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 305, fn. 1.)

[3]     All subsequent statutory references are to the Code of Civil Procedure unless otherwise noted.

[4]     For ease of reference, we will subsequently refer to Title 42 United States Code section 1983 as section 1983.

II.

FACTUAL AND PROCEDURAL BACKGROUND

On December 21, 2007, Araceli, who was then 13 years old, told her school counselor and a police officer that her older brother, Luis, had been sexually molesting and raping her since she was six years old. She said that the last time he had tried to rape her was the previous Thanksgiving Day. Araceli said that she had told her mother about the abuse two weeks earlier, and that her mother had taken her to Tijuana for a pregnancy test. Araceli told the police officer that she was planning to run away because she was afraid to go home and did not want to live there anymore. She was taken into protective custody that day.

Araceli repeated her accusations of abuse against Luis to a nurse and also to a forensic specialist who interviewed her. In addition, she related to a county social worker a detailed account of the first time that Luis raped her and told the social worker that it had happened again many times after that. The social worker asked Araceli whether she was making the accusations against Luis because her family was strict and she wanted to go out with boys. Araceli responded that she was making the accusations because she could not face being raped again.

Dr. Spencer performed a forensic physical examination of Araceli on December 26 to determine whether it appeared that she had been a victim of sexual abuse. In her declaration in support of the special motion to strike, Dr. Spencer stated that Araceli consented to the examination and to the collection of evidence, including the taking of

photographs. Plaintiffs' opposition to the motion included Araceli's declaration, in which she stated, "At some time, I was taken to Dr. Spencer and [Palomar]. I was alone, without family, without any person who was on my side, as far as I knew. Dr. Spencer probed my private parts and hurt me there. I reacted in pain, and asked about what she was doing. No one treated my pain, or even attempted to help me when I was there alone being hurt by this strange doctor." Based on her examination, Dr. Spencer concluded that there were tears in Araceli's hymen that constituted definitive evidence of sexual abuse.

Araceli's accusations against Luis resulted in the initiation of juvenile dependency proceedings for her and her younger sister. The younger sister accused Luis of sexually abusing both her and Araceli. In addition, Luis was criminally charged with eight counts of committing a lewd act upon a child. Dr. Spencer testified at Luis's criminal trial about her findings and conclusions based on her physical examination of Araceli. A pediatrician who testified as an expert witness for Luis disagreed with Dr. Spencer's conclusion that there were tears in Araceli's hymen that constituted definitive evidence of sexual abuse. Luis was convicted of two counts of lewd act upon a child with multiple victims and was sentenced to 15 years to life in state prison.

At some point after Dr. Spencer examined Araceli and before Luis's criminal trial, Araceli recanted her accusations of sexual abuse against Luis. Throughout her testimony at Luis's criminal trial, Araceli repeatedly insisted that her accusations were untrue. Regarding Dr. Spencer's examination of her, Araceli testified that Dr. Spencer "may have made a mistake in diagnosing what [she] diagnosed . . . and the findings—those findings

4

may be wrong. There must be something wrong with those findings because, as I will continue to tell you, I continue to be a virgin."

Luis filed a petition for writ of habeas corpus seeking immediate release from custody on the ground that there was newly discovered evidence that would have likely changed the outcome of the trial if it had been presented to the jury. The newly discovered evidence consisted of the reports of three additional doctors who had examined Araceli after Luis's conviction and had concluded that there was no evidence of sexual abuse or that Araceli had ever had sexual intercourse. The San Diego County District Attorney's Office and the Attorney General agreed not to oppose the petition and informed this court that the People had no objection to the requested relief or to Luis's release pending further proceedings. This court issued an order to show cause and directed the superior court to consider and determine Luis's unopposed request for immediate release. The superior court held a hearing on Luis's petition on November 22, 2011. The court noted that there was no objection to the petition, set aside Luis's conviction and judgment, and ordered that he be released from custody.[5]

---

[5]    The trial court in the present case sustained respondents' evidentiary objections to Luis's petition for writ of habeas corpus, the doctors' reports attached to the petition, and the non-opposition letters submitted to this court by the District Attorney and the Attorney General. Although we rely on this evidence in presenting the background facts of the case, it is not material to our disposition of the appeal.

Plaintiffs filed their complaint against respondents[6] and the County of San Diego and various county agencies and employees in July 2012.[7] The complaint included a first cause of action for violation of section 1983, a second cause of action for abuse of process, and a third cause of action for false imprisonment. Respondents filed a special motion to strike the complaint under section 425.16. They argued that the anti-SLAPP statute applied to all causes of action, and that plaintiffs could not establish a probability of prevailing on the merits because respondents were immune from liability, the action was barred by the statute of limitations and by the Government Claims Act, and the causes of action were unsupportable in fact and law. The motion included a request for attorney fees under section 425.16, subdivision (c).

The trial court granted the motion. The court ruled that section 425.16 applied to all of plaintiffs' causes of action and, therefore, the burden shifted to plaintiffs to show a probability of prevailing on their claims. The court decided that plaintiffs had failed to meet that burden, in part because Dr. Spencer was absolutely immune from liability for the testimony that she gave at Luis's criminal trial. Although the order is somewhat unclear, it appears that the court additionally ruled that Dr. Spencer is entitled to qualified

---

[6]    Plaintiffs sued Palomar as Dr. Spencer's employer. In support of their special motion to strike, respondents presented evidence that Dr. Spencer was an independent contractor with staff privileges at Palomar.

[7]    As noted, the named plaintiffs in the complaint include Araceli's parents and siblings. The parents are Frederica Mendez and Zeferino Galicia. In addition to Luis, Araceli's sibling plaintiffs are Fernando Galicia, Javier Galicia, Victor Galicia, and Iris Galicia.

immunity, that Palomar is afforded the same qualified immunity, and that none of the plaintiffs other than Araceli has standing to bring a section 1983 claim against respondents.[8] Regarding the abuse of process cause of action, the court noted that the tort does not lie when the defendant has taken no action under the authority of a court. The court then ruled that "because plaintiffs cannot establish a cause of action for abuse

_____

[8] Because the "Substantive Ruling" section of the court's lengthy order granting respondents' special motion to strike consists in large part of the court's recitations of the parties' arguments (mostly respondents'), it is sometimes difficult to determine from the language of the order whether the court is making a ruling or simply reciting an argument, as the following paragraph illustrates:

"Defendants contend they are entitled to qualified immunity under a [section] 1983 cause of action. The qualified immunity under section 1983 extends to private individuals retained by the government to carry out its work. [Citation.] The qualified immunity extends to private physicians. [Citation.] Defendants maintain that in this case, qualified immunity applies because at the time of the incident, the law was not clearly established so that it would have been clear to a reasonable physician that the particular conduct (i.e., participating in a child abuse investigation and diagnosing child abuse) could be unlawful in the situation confronted. Failure to report would have subjected Dr. Spencer to civil and criminal penalties. [Citations.] Thus Dr. Spencer as a private physician hired to perform a forensic examination during a child abuse investigation, is entitled to qualified immunity. Palomar is afforded the same immunity. [Citation.] Plaintiffs, other than the patient, lack standing to bring a [section] 1983 claim and Plaintiffs lack standing to sue for damages arising out of a purported loss of sibling companionship. Actions under [section] 1983 are personal in nature in the sense that the plaintiff must have personally suffered the alleged deprivation of constitutional or federal rights. [Citations.] Here Defendants argue that Plaintiffs cannot establish that any allege[d] wrongful act by Dr. Spencer or Palomar arising out of the alleged misdiagnoses of child abuse was directed at anyone but Araceli. Any duty to provide an appropriate medical diagnosis is a duty owed by healthcare providers only to their patient. [Citation.] Only the patient can recover for the purported damages arising from the misdiagnosis. Moreover, plaintiffs Araceli, Fernando, Javier, Victor and Iris Galicia allege purported damages for separation from their other siblings [citation]. However, Courts including the Ninth Circuit have rejected a cognizable liberty interest in sibling companionship. [Citations.] Plaintiffs lack standing to sue for damages arising out of the purported loss of sibling companionship. Thus, the present motion must be granted."

7

of process against moving defendants, the motion must be granted." The court ordered that respondents' request for attorney fees and costs would be "determined in a separate noticed motion."[9]

Respondents filed a motion for attorney fees and costs under section 425.16, subdivision (c), requesting fees and costs in the amount of $28,448. Plaintiffs opposed the motion on the ground that the amount of the fees requested was excessive. The court granted respondents' motion and awarded respondents the full amount requested—i.e., $28,448.

III.

DISCUSSION

APPEAL FROM ORDER GRANTING SPECIAL MOTION TO STRIKE

A.      *The first cause of action for violation of section 1983 is the only cause of action subject to respondents' special motion to strike and Araceli is the only plaintiff on that cause of action*

We begin by clarifying that although the notice of appeal was filed on behalf of all of the named plaintiffs, Araceli is the sole appellant in case No. D063758, and the complaint's first cause of action for violation of section 1983 is the sole cause of action at issue in the appeal.

_____

[9]      After granting respondents' special motion to strike, the trial court entered a judgment of dismissal in favor of respondents. However, plaintiffs' appeal lies from the order granting the special motion to strike rather than the judgment because the order is separately appealable. (§ 904.1, subd. (a)(13); *Maughan v. Google Technology, Inc.* (2006) 143 Cal.App.4th 1242, 1246-1247.) Plaintiffs' notice of appeal identifies both the order granting the special motion to strike and the judgment, and is timely as to the order.

In their special motion to strike, respondents stated: "Plaintiffs allege two causes of action as against Palomar and Dr. Spencer: 1) Violation of . . . section 1983; and 2) Abuse of Process." The court's order granting respondents' motion contains nearly identical language.[10] However, the complaint's second cause of action for abuse of process is clearly directed only at the deputy district attorney who prosecuted the criminal case against Luis and the county, as his employer; it contains no charging allegations against Dr. Spencer or Palomar. Plaintiffs allege in that cause of action that "[d]efendant [Keith] Watanabe, in order to punish Plaintiff Luis Galicia for his exoneration, cover up his misuse of coerced, recanted testimony, and preclude subsequent litigation, misused his office, [and] misled a judge into delaying and blocking Luis Galicia's judicially mandated and agreed upon release. In so acting, Defendant Watanabe improperly made ex parte communications without notice to Luis Galicia's counsel and actively misrepresented the official position of the San Diego County District Attorney's office. [¶] Defendant County of San Diego is vicariously liable for Defendant Watanabe's abuse of process, and directly liable because it owed Luis Garcia the duty of immediate release based on Penal Code [section] 1384 and Government Code[ sections] 815.2, 815.6, 820 and 820.4"

---

10    Respondents' special motion to strike did not address the complaint's third cause of action for false imprisonment. Luis is the only plaintiff alleged to have been falsely imprisoned in that cause of action.

9

We find no basis to construe these allegations as charging Dr. Spencer or Palomar with abuse of process.[11] Because the second cause of action for abuse of process was not brought against Dr. Spencer or Palomar, there was no reason for them to challenge it in their special motion to strike. The fact that the second cause of action does not concern respondents is presumably why plaintiffs do not address it in their opposition to the special motion to strike or in their opening brief on appeal.

Section 425.16, subdivision (b)(1) authorizes a special motion to strike "[a] cause of action *against a person* arising from any act of *that person* in furtherance of the person's right to petition or free speech . . . ." (Italics added.) We construe this provision as authorizing *the person whose protected act is the subject of a cause of action* to bring a special motion to strike the cause of action. There is no statutory authority for a court to grant a special motion to strike a cause of action when the person bringing the motion is not the person against whom the cause of action is asserted. However, because the court's granting respondents' motion as to the second cause of action for abuse of process did not affect the viability of that cause of action as to the county defendants against whom it was actually brought, the order striking it as to respondents is harmless error.

---

11      Respondents are not made defendants to the second cause of action for abuse of process by plaintiffs' boilerplate agency allegations under the "FACTS COMMON TO ALL COUNTS" section of the complaint because, if for no other reason, those allegations are against the fictitiously named Doe defendants only. The complaint alleges on information and belief that "each of the Defendants sued herein as DOES 1 through 50, inclusive, were at all times alleged herein, agents, employees, servants, co-conspirators, and/or co-workers of the named Defendants . . . ."

10

The only cause of action in the complaint that was brought against respondents is the first cause of action for violation of section 1983, and plaintiffs have made it abundantly clear that Araceli is the only plaintiff who is bringing that cause of action. Plaintiffs' opposition to the motion to strike and opening brief on appeal both include the assertion, "To be clear, only Araceli Galicia seeks recovery against [Spencer] and [Palomar]."  Further, in oral argument on the motion, plaintiffs' counsel stated, "[I]t was never the intent of the family or the attorneys for the family to ever bring a cause of action against Dr. Spencer or [Palomar] on behalf of anyone but Araceli.  Araceli is the only person who has brought a cause of action against Dr. Spencer and [Palomar]."  Counsel later reiterated, "I will stipulate that all other family members, except for Araceli, never made a cause of action against Dr. Spencer or [Palomar], and I think that that is underscored by our first amended pleading."[12]  Accordingly, we will limit our

---

[12]     The introduction section of the opening brief contains the statement, "The ironic outcome of the grant of the 425.16 motion is that Plaintiff Araceli Galicia *and her parents* are being denied pursuing an actual grievance arising out of the knowing violation of their constitutional rights . . . ."  (Italics added.)  At another point in the opening brief plaintiffs assert, "The trial court's ruling holds that only Araceli Galicia may assert a [section] 1983 claim against these [d]efendants . . . [.]  This is legally erroneous . . . and . . . constitutes reversible error.  The declaration of Araceli . . . states that she was alone with Dr. Spencer during the investigation. . . .  This supplies sufficient proof to show [respondents'] unconstitutional violation of her and *her parents'* constitutional familial rights."  (Italics added.)  We disregard this contention concerning Araceli's parents in light of plaintiffs' repeated assertion and "stipulation" on the record that Araceli is the sole plaintiff asserting the section 1983 cause of action against respondents.

In addition, the original complaint alleged that each and every plaintiff suffered compensatory damages and sought "punitive damages against each government employee named herein" for the alleged violations of section 1983.  Apparently the first amended

11

discussion regarding the special motion to strike to whether the court properly struck Araceli's cause of action against respondents for violation of section 1983.

B.    *Legal Principles and Standard of Review*

Section 425.16, the anti-SLAPP statute, provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."  (*Id*., subd. (b)(1).)  The purpose of the statute is to prevent SLAPPs by disposing of them early without great cost to the defendant.  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 278 (*Soukup*).)  " 'Section 425.16 therefore establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation.' "  (*Ibid.*)

" 'Section 425.16 posits . . . a two-step process for determining whether an action is a SLAPP.  First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity[13] . . . .  If the

---

complaint, which is not included in the record on appeal, clarifies that Araceli is the only plaintiff who is suing under section 1983.  In any event, to the extent that plaintiffs' pleadings can be read to include plaintiffs other than Araceli in the section 1983 cause of action, the other plaintiffs clearly have waived any right they may have had to pursue that cause of action.

13    Categories of protected activity are set forth in section 425.16, subdivision (e), which provides:  "As used in this section, 'act in furtherance of a person's right of petition

12

court finds that such a showing has been made, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' " (*Soukup, supra,* 39 Cal.4th at pp. 278-279, italics omitted.)

"We review an order granting or denying a special motion to strike de novo. [Citation.] That is, we independently determine whether the challenged cause or causes of action arise from protected activities, and if so whether the plaintiff has demonstrated a probability of prevailing on the claims." (*Dwight R. v. Christy B.* (2013) 212 Cal.App.4th 697, 710 (*Dwight R.*).)

C.      *Araceli's cause of action for violation of section 1983 arises from protected activity*

To make the threshold showing that a challenged cause of action is one "arising from" protected activity, the defendant must show that the act underlying the cause of action was *itself* an act in furtherance of the right of petition or free speech. (*City of*

---

or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

*Cotati v. Cashman* (2002) 29 Cal.4th 69, 78; *Dwight R., supra,* 212 Cal.App.4th at p. 710.)  "In the anti-SLAPP context, the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech.  [Citations.]  'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e) . . . .' "  (*City of Cotati v. Cashman, supra,* at p. 78.)

Protected activity under section 425.16, subdivision (e) includes "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law act" in furtherance of the defendant's right of petition or free speech.  (§ 425.16, subd. (e)(2).)  This category of protected activity includes "acts ' "preparatory to or in anticipation of" ' the bringing of an action or other official proceeding."  (*Dwight R., supra,* 212 Cal.App.4th at p. 710.)  Accordingly, the statute protects an official investigation of a suspicion of sexual abuse against a child (*id.* at p. 711), as well as a "defendant's reports of child abuse to persons who are bound by law to investigate the report or to transmit the report to the authorities . . . ."  (*Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1570.)

As to respondents, Araceli's cause of action under section 1983 is based on Dr. Spencer's vaginal examination of her, during which Dr. Spencer allegedly "hurt her there," and on Dr. Spencer's testimony about the examination in Luis's criminal trial.  Dr. Spencer's examination of Araceli unquestionably was preparatory to or in anticipation of

14

both criminal proceedings against Luis and dependency proceedings to protect Araceli and her younger sister. As such, it is protected activity under section 425.16, subdivision (e)(2). Dr. Spencer's trial testimony falls within section 425.16, subdivision (e)(1), which protects from liability "any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law."

Araceli argues that her section 1983 cause of action against respondents does not satisfy the first prong of the anti-SLAPP statute because their alleged violation of section 1983 includes a battery, which is noncommunicative conduct and not constitutionally protected speech. This argument is without merit because the battery against Araceli is alleged to have occurred when Dr. Spencer's physical examination of Araceli caused Araceli to experience pain. As we discussed, Dr. Spencer's physical examination of Araceli, including any part of the examination that may have caused Araceli to experience pain or discomfort, is a protected act preparatory to or in anticipation of the commencement of an action or official proceeding. (*Dwight R., supra,* 212 Cal.App.4th at p. 710.)

Moreover, plaintiffs' complaint does not include a separate cause of action for battery; the battery allegation is contained within, and is incidental to, the cause of action for violation of section 1983. "Where both constitutionally protected and unprotected conduct is implicated by a cause of action, a plaintiff may not 'immunize' a cause of action challenging protected free speech or petitioning activity from a special motion under section 425.16 by the artifice of including extraneous allegations concerning

15

nonprotected activity. [Citation.] Thus, when allegations of nonprotected activity are incidental or collateral to a plaintiff's claim challenging primarily the exercise of the rights of free speech or petition, they may be disregarded in determining whether the cause of action arises from protected activity." (*Scott v. Metabolife Internat., Inc.* (2004) 115 Cal.App.4th 404, 414.) Accordingly, Dr. Spencer's examination of Araceli is protected activity notwithstanding the allegation that Dr. Spencer committed a battery during the examination.[14] Respondents met their burden to show that Araceli's cause of action under section 1983 arises from protected activity under section 425.16, subdivision (e).[15]

D.    *Araceli did not establish a probability of prevailing on her cause of action for violation of section 1983*

To meet the burden of establishing a probability of prevailing on a claim, the plaintiff must present competent, admissible evidence that the claim is legally sufficient and is supported by a sufficient prima facie showing of facts to sustain a favorable judgment. (*Dwight R., supra,* 212 Cal.App.4th at pp. 713-714.) The burden is similar to

---

[14]    To the extent that the allegation that Dr. Spencer committed a battery based on the pain that her examination allegedly caused Araceli to experience is viewed as a separate cause of action for battery, there is no probability that Araceli would prevail on the cause of action, given the general rule that "one who consents to a touching cannot recover in an action for battery." (*Conte v. Girard Orthopaedic Surgeons Medical Group, Inc.* (2003) 107 Cal.App.4th 1260, 1266.) By definition, a physical examination will include the examiner's touching the person examined.

[15]    At oral argument, Araceli's counsel conceded that Araceli's section 1983 cause of action arises from protected activity.

the standard used in deciding motions for summary judgment, nonsuit, or directed verdict in that the plaintiff need only establish that the claim has minimal merit to avoid being stricken under the anti-SLAPP statute. (*Id.* at p. 714.) " 'In determining whether the plaintiff has made a prima facie evidentiary showing . . . , we consider the pleadings and the evidence adduced on the motion. [Citation.] We neither weigh the credibility nor compare the probative strength of competing evidence [citation], and we disregard declarations lacking in foundation or personal knowledge, or that are argumentative, speculative, impermissible opinion, hearsay, or conclusory." (*Ibid.*)

Based on the record in this case, we conclude that Araceli has failed to establish that her cause of action against respondents for violation of section 1983 has even minimal merit.[16]

Section 1983 provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any . . . person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ." To recover damages under section 1983, the plaintiff must establish that the defendant acted under color of state law and deprived plaintiff of a

---

16    In considering whether Araceli has established a probability of prevailing on her cause of action for violation of section 1983, we have disregarded respondents' evidentiary objections to plaintiffs' opposition evidence and the trial court's rulings on those objections. In light of our determination that Araceli has not established a probability of prevailing on her section 1983 cause of action, we do not address plaintiffs' contentions that the trial court erred by applying state law immunities to that cause of action and erroneously sustained evidentiary objections to Araceli's declaration.

constitutional right. (*Dawson v. City of Seattle* (9th Cir. 2006) 435 F.3d 1054, 1061.) " ' "State courts look to federal law to determine what conduct will support an action under section 1983. [Citation.]" ' [Citation.] 'The threshold inquiry [in analyzing a section 1983 claim] is whether the evidence establishes that appellants have been deprived of a constitutional right.' " (*Arce v. Childrens Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1472-1473 (*Arce*).)

Plaintiffs' complaint does not clearly identify which of Araceli's constitutional rights Dr. Spencer or Palomar allegedly violated. The complaint alleges that "[a]ll of the [d]efendants violated plaintiffs' constitutional rights under the Fourth, Fifth, Ninth and Fourteenth Amendments," but does not identify any specific right under those amendments. On appeal, Araceli asserts that respondents violated her constitutional familial rights.

" ' "Parents and children have a well-elaborated constitutional right to live together without governmental interference." [Citation.] "The Fourteenth Amendment guarantees that parents will not be separated from their children without due process of law except in emergencies." [Citation.]' [Citation.] This 'right to family association' [citation] requires '[g]overnment officials . . . to obtain prior judicial authorization before intruding on a parent's custody of her child unless they possess information at the time of the seizure that establishes "reasonable cause to believe that the child is in imminent danger of serious bodily injury and that the scope of the intrusion is reasonably necessary to avert that specific injury." ' " (*Arce, supra,* 211 Cal.App.4th at p. 1473.) However, the

18

constitutionally protected interest that parents have in the custody, care and management of their children is not absolute; it is "limited by the compelling governmental interest in the protection of children . . . . [Citation.] The right to familial integrity, in other words, does not include a right to remain free from child abuse investigations." (*Croft v. Westmoreland County Children and Youth Services* (3rd Cir. 1997) 103 F.3d 1123, 1125 (*Croft*).) "An indictment or serious allegations of abuse which are investigated and corroborated usually gives rise to a reasonable inference of imminent danger sufficient to justify taking children into temporary custody." (*Ram v. Rubin* (9th Cir. 1997) 118 F.3d 1306, 1311.)

The evidence in this case does not support Araceli's claim that Dr. Spencer violated her constitutionally protected familial rights. The critical and undisputed fact in this case is that Araceli told Dr. Spencer and everyone else who played a role in her being physically examined and taken into protective custody that her brother Luis had repeatedly sexually abused and raped her. But for Araceli's accusations against Luis, there would have been no examination by Dr. Spencer, no dependency proceedings involving Araceli and her younger sister, and no criminal case against Luis. As noted, Araceli's constitutionally protected familial rights do not include the right to be free of a child abuse investigation (*Croft, supra,* 103 F.3d at p. 1125), particularly one triggered by her own accusations of abuse. Araceli's accusations of rape against Luis supported a reasonable inference of imminent danger sufficient to justify taking her and her younger sister into protective custody (*Ram v. Rubin, supra,* 118 F.3d at p. 1311), and sufficient to

19

justify subjecting her to a physical examination to determine if there was physical evidence to support her rape accusation.[17] Further, because Araceli was 13 years old at the time of the examination, under Family Code section 6927 and Penal Code section 13823.11, parental consent to the examination was not required.[18]

Under the undisputed facts and circumstances of this case, there is simply no basis for a trier of fact to find that Dr. Spencer's examination of Araceli deprived Araceli of her constitutionally protected familial rights. In their reply to plaintiffs' opposition to the

---

[17]     To the extent that Dr. Spencer's examination evidenced professional negligence in light of other doctors' disagreement with her conclusions, that would not support a section 1983 claim. An official's mere negligence cannot "deprive" a person of a constitutional right. (*Daniels v. Williams* (1986) 474 U.S. 327, 330-331.) "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles." (*Baker v. McCollan* (1979) 443 U.S. 137, 146; *Irwin v. City of Hemet* (1994) 22 Cal.App.4th 507, 520 ["[T]he state of mind required to deprive someone of a due process right to familial society and companionship is, at minimum, something more culpable than mere negligence"].)

[18]     Family Code section 6927 provides: "A minor who is 12 years of age or older and who is alleged to have been raped may consent to medical care related to the diagnosis or treatment of the condition and the collection of medical evidence with regard to the alleged rape."

Penal Code section 13823.11, subdivision (c)(4) provides that "[p]ursuant to Chapter 3 (commencing with Section 6920) of Part 4 of Division 11 of the Family Code, a minor may consent to hospital, medical, and surgical care related to a sexual assault without the consent of a parent or guardian." Subdivision (c)(5) of that statute provides: "In cases of known or suspected child abuse, the consent of the parents or legal guardian is not required. In the case of suspected child abuse and nonconsenting parents, the consent of the local agency providing child protective services or the local law enforcement agency shall be obtained. Local procedures regarding obtaining consent for the examination and treatment of, and the collection of evidence from, children from child protective authorities shall be followed."

20

special motion to strike, respondents aptly pinpoint the fundamental flaw in Araceli's section 1983 claim with the following observation: "The basis for Araceli's claim for damages is that she claims NOW that she lied. Araceli contends that the people who relied on her to be truthful and believed her to be a victim[] violated her constitutional rights by taking steps to protect her." Dr. Spencer performed a physical examination of Araceli for Araceli's protection. Dr. Spencer's performance of that examination did not deprive Araceli of any constitutional right.

Plaintiffs rely almost exclusively on *Wallis ex rel Wallis v. Spencer* (9th Cir. 1999) 202 F.3d 1126 (*Wallis*) as support for their claim that respondents violated Araceli's constitutionally protected familial rights. Plaintiffs contend that respondents "were on notice since at least 1999[, when *Wallis* was filed,] that the action[s] of Dr. Mary Spencer were improper, yet they continued such civil rights violations in conscious disregard of [p]laintiffs' rights." *Wallis* is not on point and does not show that Dr. Spencer, in plaintiffs' words, "has a decade-old custom and practice (which Palomar has known of and approved) of conducting intrusive physical examinations and [providing] false 'opinions' of sexual abuse." In *Wallis*, City of Escondido police officers seized two siblings, a two-year-old boy and his five-year-old sister, and placed them in a county facility, based on the mistaken belief that a court had ordered that the children be removed from the home. The police seized the children after the children's mentally ill and delusional aunt told a therapist that the father was planning to sacrifice his two-year-old son to Satan on the date of the autumnal equinox. (*Id.* at pp. 1131-1132.) On the

21

boy's third birthday several days later, without judicial authorization or notice to the parents, a police officer took the children to Palomar Hospital where Dr. Spencer performed highly intrusive and traumatic anal and vaginal physical examinations on the children to determine whether they had been sexually abused. (*Id.* at pp. 1131, 1134-1135.) Based on Dr. Spencer's report that both children had been sexually abused and the misrepresentation in her report that Dr. Horowitz, a specialist from Children's Hospital Sexual Abuse Unit, had concurred with her findings, the juvenile court retained the children in county protective custody.[19] (*Id.* at p. 1135.)

Two months later, Dr. Horowitz sent Child Protective Services (CPS) a letter informing CPS that she had not supported Dr. Spencer's findings of sexual abuse and that, after reviewing the full file and all of the evidence, she did not agree with Dr. Spencer's conclusion that the children had been abused. (*Wallis, supra,* 202 F.3d at p. 1135.) CPS immediately released the children to their maternal grandmother and 11 days after Dr. Horowitz sent her letter to CPS, the children were returned to the custody of their parents by court order. (*Ibid.*) The *Wallis* court noted: "No one now contends that either child was ever sexually or physically abused, that there was ever any evidence of

---

[19]    The juvenile court in *Wallis* rejected the allegations regarding occult sacrifice as a basis to retain the children in county custody. (*Wallis, supra,* 202 F.3d at p. 1135.)

22

any abuse by their parents, or that [their father] had ever had any intention of sacrificing [his son] to Satan."  (*Ibid.*)[20]

The children and their parents sued the City of Escondido and others, including Dr. Spencer (who was subsequently dismissed from the case on immunity grounds) (*Wallis, supra,* 202 F.3d at p. 1145, dis. opn. of Rymer, J.), alleging violation of their federal constitutional rights and various state law claims.  (*Wallis, supra,* at p. 1135.)  The *Wallis* court reversed a grant of summary judgment in favor of the City of Escondido, concluding that there were "genuine issues of fact as to whether the [plaintiffs'] constitutional rights were violated when the Escondido police officers took the children into custody, placed them in a county institution, and subjected them to invasive medical procedures."  (*Id.* at p. 1142.)  The *Wallis* court further concluded that there were triable issues of material fact as to whether the City of Escondido had "a custom or practice of taking children from their homes based on telephone calls from CPS without adequate safeguards to ensure the removal is legal" and "as to whether these customs and practices had a 'direct causal link' to the deprivations of the [plaintiffs'] constitutional rights . . . ."  (*Id.* at p. 1143.)

*Wallis* is distinguishable from the present case.  In *Wallis*, children aged three and five years were subjected to physical examinations to determine whether they had been

---

[20]    The inspiration for the present lawsuit appears to be the fortuitous fact that Dr. Spencer was the examining physician in *Wallis* and, as in the present case, another doctor disagreed with her findings of evidence of sexual abuse.  (*Wallis, supra,* 202 F.3d at p. 1135.)

23

sexually abused, despite the fact there had been *no accusation of sexual abuse*. The examinations were performed without a court order and without the parents' knowledge or consent, which was required given the children's ages. (*Wallis, supra,* 202 F.3d at p. 1141.) Here, in stark contrast, Araceli accused Luis of sexually abusing and raping her, and there was evidence that she consented to the physical examination.[21] Under California law, Araceli's parents' consent to the examination was not required because she was over the age of 12. In light of these differences, *Wallis* does not support Araceli's claim that respondents deprived her of her constitutional familial rights.

Araceli contends that her declaration in opposition to the special motion to strike demonstrates that she was battered by Dr. Spencer and falsely imprisoned, and is sufficient to meet her burden to show a probability of prevailing on her section 1983 cause of action. As noted, Araceli claims that Dr. Spencer committed a battery by causing Araceli to experience pain during her physical examination; she does *not* claim that Dr. Spencer committed battery by performing the examination without her consent. In light of the compelling governmental interest in the protection of children (*Croft, supra,* 103 F.3d at p. 1125), any pain or discomfort that Araceli may have experienced during the physical examination that was performed with her consent to investigate her

---

[21]     There is no allegation in the complaint, nor any averment in Araceli's declaration in opposition to the special motion to strike, that Araceli did not consent to the physical examination. The complaint alleges that she was examined without her *parents'* consent.

24

rape allegations would not support a cause of action under section 1983 for deprivation of a constitutional right.

As previously noted, the only cause of action for false imprisonment in plaintiffs' complaint is the third cause of action that Luis alleged against San Diego County. In the section 1983 cause of action, plaintiffs allege that in furtherance of a conspiracy by all of the defendants to "build a knowingly false criminal case against Luis," Araceli and her younger sister "were improperly restrained and falsely imprisoned by being deliberately kept from the rest of their family for 16 months."[22] However, plaintiffs' characterization of the juvenile dependency proceedings initiated for Araceli's protection as "false imprisonment" does not support a cause of action by Araceli for either false imprisonment or deprivation of her constitutionally protected familial rights.

Regarding plaintiffs' conspiracy allegations, to support a section 1983 claim, it is not enough for the plaintiff to merely allege that a defendant conspired with other state actors to deprive the plaintiff of her constitutional rights; the plaintiff must "adduce competent, admissible evidence that there was an agreement or a meeting of the minds between [the defendant] and at least [one other] state actor to deprive [her of her] federal constitutional rights." (*Dwight R., supra,* 212 Cal.App.4th at p. 714.) There is no evidence in the record to support a finding that respondents conspired with other state actors to deprive Araceli of her constitutional rights.

---

22     The complaint lists various other acts purportedly taken in furtherance of the alleged conspiracy, none of which concern respondents.

Finally, plaintiffs have failed to show a probability of prevailing on Araceli's section 1983 cause of action against Palomar because there is no evidence that Palomar had a custom or policy that would subject it to liability for deprivation of constitutional rights. "In [*Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658 (*Monell*)], the court held that a government entity could not be sued under section 1983 for an injury inflicted solely by its employees or agents. 'Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [section] 1983.' " [Citation.] [¶] Four conditions must be satisfied in order to establish government liability for failing to act to preserve a constitutional right under *Monell*. The plaintiff must establish that: (1) the plaintiff was deprived of a constitutional right; (2) the government entity had a policy; (3) this policy amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation." (*Perry v. County of Fresno* (2013) 215 Cal.App.4th 94, 105-106.)

Araceli has not established a probability of prevailing on a *Monell* claim against Palomar because, in addition to the absence of evidence that she was deprived of a constitutional right, there is no evidence that Palomar had a policy that was the "moving force" behind the constitutional deprivation that she claims to have suffered. Based entirely on *Wallis,* Araceli's opening brief suggests there was such a policy because, in plaintiffs' words, "[d]efendants were on notice since at least 1999 that the action[s] of Dr.

26

Mary Spencer were improper, yet they continued such civil rights violations in conscious disregard of [Araceli's] rights."

As we discussed, the facts of *Wallis* are patently distinguishable from the present case. The alleged constitutional deprivations that occurred in *Wallis* do not constitute competent, admissible evidence that Palomar had a policy or custom that amounted to deliberate indifference to Araceli's constitutional rights or was causally related to the deprivation of her constitutional rights that she claims in this case. The court properly granted respondents' special motion to strike on the ground that Araceli failed to establish a probability of prevailing on her cause of action against respondents for violation of section 1983.

E.    *Appeal from order awarding attorney fees*

1.    *The award of attorney fees was not an abuse of discretion*

Respondents' motion under section 425.16, subdivision (c), included a request for attorney fees and costs in the amount of $28,448. The court awarded respondents that amount. Plaintiffs contend that the trial court abused its discretion by awarding an excessive amount of attorney fees.

Section 425.16, subdivision (c) provides that "in any action subject to [the special motion to strike], a prevailing defendant . . . shall be entitled to recover his or her attorney's fees and costs." An award of attorney fees to a defendant who brings a successful special motion to strike is mandatory. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1131 (*Ketchum*).) The fee award may include not only the fees incurred with

respect to the underlying claim, but also the "fees incurred in enforcing the right to mandatory fees under . . . section 425.16. . . . '[A]bsent circumstances rendering the award unjust, fees recoverable . . . ordinarily include compensation for all hours reasonably spent, including those necessary to establish and defend the fee claim.' " (*Id.* at p. 1141.)

"We review the amount of attorney fees awarded for abuse of discretion. [Citation.] An attorney fee award will not be set aside 'absent a showing that it is manifestly excessive in the circumstances.' " (*Mallard v. Progressive Choice Ins. Co.* (2010) 188 Cal.App.4th 531, 544.) "A ruling amounts to an abuse of discretion when it exceeds the bounds of reason, and the burden is on the party complaining to establish that discretion was abused." (*Gerbosi v. Gaims, Weil, West & Epstein, LLP* (2011) 193 Cal.App.4th 435, 450.) The trial court's decision " ' "will only be disturbed when there is no substantial evidence to support the trial court's findings or when there has been a miscarriage of justice. " ' " (*Pelligrino v. Robert Half Internat., Inc.* (2010) 182 Cal.App.4th 278, 287-288.)

We conclude that plaintiffs have not met their burden on appeal of establishing that the fee award was an abuse of discretion.

"[A] court assessing attorney fees begins with a touchstone or lodestar figure, based on the 'careful compilation of the time spent and reasonable hourly compensation of each attorney . . . involved in the presentation of the case.' " (*Ketchum, supra,* 24 Cal.4th at pp. 1131-1132.) The California Supreme Court has "expressly approved the

28

use of prevailing hourly rates as a basis for the lodestar, noting that anchoring the calculation of attorney fees to the lodestar adjustment method ' "is the only way of approaching the problem that can claim objectivity, a claim which is obviously vital to the prestige of the bar and the courts." ' " (*Id.* at p. 1132.) The lodestar is the basic fee for comparable legal services in the community, and the trial court may adjust the lodestar figure under section 425.16 to provide a fee enhancement based on various factors that are not relevant here because respondents did not seek a lodestar enhancement. (*Id.* at pp. 1132, 1136.)

Respondents' counsel, Julie R. Dann, filed a declaration in support of the motion for attorney fees in which she stated that her firm charged respondents $185 per hour for partner work and $80 per hour for paralegal work, which she believes is well below the market value for similar legal services in the San Diego community.[23] Dann represented that respondents were requesting only fees associated with the special motion to strike, and not fees incurred "generally litigating the case."

Dann states in her declaration that the special motion to strike "required extensive hours of analysis of case law, including very recent developments regarding [special motions to strike] dealing with civil rights claims brought under . . . section 1983 and [special motions to strike] dealing with sexual abuse forensic medical examiners as well as researching the various immunities that apply under state and federal law for testimony

_____

[23] Dann noted that in plaintiffs' opposition to the special motion to strike, plaintiffs' counsel requested attorney fees at the rate of $400 per hour.

related to forensic medical examiner's reviews and testimony during subsequent criminal proceedings." Because plaintiffs' complaint was based largely on Luis's criminal trial, preparation of the special motion to strike required that Dann obtain all of the court records from that case and review transcripts of the testimony of 20 witnesses who testified at Luis's criminal trial. The 33 exhibits that Dann filed with the special motion to strike include transcriptions of witness testimony from Luis's trial. She also reviewed and analyzed documents related to Luis's appeal of his criminal conviction and his subsequent petition for writ of habeas corpus. Dann's declaration includes a breakdown of the time that she and another attorney spent working on the special motion to strike, and a request for compensation for 1.7 hours of paralegal time. Dann spent a total of 135.3 hours on the motion, including "working with witnesses to obtain supporting declarations; researching and outlining the legal issues for the . . . motion; gathering important facts for the motion; drafting, reviewing, researching and revising the memorandum of points and authorities, notice of motion, exhibits, and reply brief and evidentiary objections; communicating with plaintiffs' counsel and counsel for codefendants regarding the . . . motion; preparing for oral arguments . . . , preparing the notice of entry of the court's order and the judgment . . . , and drafting and revising the motion for attorney[] fees."

In its order awarding respondents attorney fees, the trial court found that respondents had "established that the billing rates fees and legal services provided by [their counsel] for this anti-SLAPP motion to strike [were] reasonable and were actually

30

incurred to litigate the anti-SLAPP motion as well as this fee motion." The court found that the fees that respondents incurred were necessary because of the "complexity of the factual and legal issues and the vigorous opposition presented by the [p]laintiffs." The court further found that the amount of the award that respondents requested was "consistent with the accepted range of anti-SLAPP fee awards that have been affirmed by the California Courts of Appeal."

Plaintiffs do not challenge the court's finding that the hourly rate of $185 that respondent's counsel charged for preparing the motion was a reasonable rate. Plaintiffs' main complaint with the attorney fee award is that the amount of time that Dann claims to have spent working on the special motion to strike is excessive.[24] Plaintiffs' contend that the court abused its discretion in awarding respondents the entire amount of fees requested because the request is, on its face, in plaintiffs' words, "vague, [with] different aspects lumped together, and the bulk of the time spent [was] totally unrelated to the straight-forward claimed statutory immunity . . . ."

It is well settled that "an award of attorney fees may be based on counsel's declarations, without production of detailed time records." (*Raining Data Corp. v.*

---

[24]    Plaintiffs suggest that respondents' counsel could have prepared the special motion to strike relatively quickly because they are a large law firm and their Web site "trumpets its efficiency and large data base designed to . . . [¶] . . . achieve efficient, cost-effective results." Plaintiffs request that we take judicial notice of certain materials from the Web site "relating to training, areas of expertise, and particular experience." We deny the request for judicial notice on the ground the materials in question are unnecessary to our resolution of the appeal. (*County of San Diego v. State of California* (2008) 164 Cal.App.4th 580, 613, fn. 29.)

*Barrenechea* (2009) 175 Cal.App.4th 1363, 1375.)  Dann's declaration sufficiently supports the trial court's finding that the amount of time that Dann spent working on the special motion to strike is reasonable.  Specifically, the court reasonably could have found that Dann's extensive review of the underlying criminal case was necessary in light of the fact that both the underlying case and the instant case arose from Araceli's accusations of sexual abuse and rape against Luis.  Plaintiffs' complaint in the instant case put at issue both Dr. Spencer's examination of Araceli and Luis's criminal trial, alleging that Luis was wrongfully convicted as a result of a conspiracy among all of the defendants.  Respondent's special motion to strike did not challenge the complaint solely on grounds of absolute and qualified immunity, as plaintiffs suggest; respondents also argued and presented evidence that they did not deliberately deprive Araceli of any constitutional right in connection with Dr. Spencer's examination of her.  Dann's declaration constitutes substantial evidence that supports the trial court's findings in connection with its award of attorney fees.  The award is not manifestly excessive under the circumstances and does not exceed the bounds of reason.

Respondents correctly contend that they are entitled to attorney fees and costs incurred in this appeal in an amount to be determined by the trial court.  " 'A statute authorizing an attorney fee award at the trial court level includes appellate attorney fees unless the statute specifically provides otherwise.' [Citation.]  Since section 425.16, subdivision (c) provides for an award of attorney fees and costs to a prevailing defendant on a special motion to strike, and does not preclude recovery of appellate attorney fees by

a prevailing defendant-respondent, those fees are recoverable."  (*Dove Audio, Inc. v.*

*Rosenfeld, Meyer Susman* (1996) 47 Cal.App.4th 777, 785.)

IV.

DISPOSITION

The order granting respondents' special motion to strike is affirmed.  The order

awarding respondents' attorney fees and costs is affirmed.  Respondents shall recover

their costs and attorney fees on appeal, the amount of which shall be determined by the

trial court.

AARON, J.

WE CONCUR:

McCONNELL, P. J.

McINTYRE, J.