Filed 4/26/13

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PAUL PERRY et al.,<br><br>    Plaintiffs and Appellants,<br><br>    v.<br><br>COUNTY OF FRESNO,<br><br>    Defendant and Respondent. | F063887<br><br>(Super. Ct. No. 07CECG02501)<br><br><br>**ORDER MODIFYING OPINION AND**<br>**DENYING REHEARING**<br>[NO CHANGE IN JUDGMENT] |

**THE COURT:**

It is ordered that the opinion filed herein on April 3, 2013, be modified by deleting footnote 2 on page 9 in its entirety.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

_____
                                                                                       Franson, J.

WE CONCUR:


_____
Levy, Acting P.J.



_____
Gomes, J.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| PAUL PERRY et al., | F063887 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. 07CECG02501) |
| COUNTY OF FRESNO, | **OPINION** |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Fresno County. Alan M. Simpson, Judge.

Law Office of Jacob M. Weisberg and Jacob M. Weisberg for Plaintiffs and Appellants.

Weakley & Arendt, Lelise M. Dillahunty and James D. Weakley for Defendant and Respondent.

-ooOoo-

**INTRODUCTION**

Appellants, Paul Perry, Felicia Davis Perry, and Orene Perry, challenge the dismissal of their complaint against respondent, County of Fresno (County), following the sustaining of the County's demurrer without leave to amend and the granting of the County's summary judgment motion. Appellants alleged that the County was liable for damages caused by the County's employee, Alejandro Vital when, in his capacity as a correctional officer, Vital accessed information regarding various jail inmates and then

wrote fake letters to those inmates that were purportedly from Paul Perry. Vital wrote these letters to provoke the inmates to retaliate against Perry and the other appellants and thereby intimidate them into dropping a personal injury lawsuit they had filed against Vital. The trial court ruled on demurrer that appellants had not stated a cause of action for civil rights violations against the County for failure to train and supervise Vital and on summary judgment that the County was not liable to appellants for Vital's tortious action under the respondeat superior doctrine.

Relying on *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202 (*Mary M.*), appellants argue that the County is liable for damages arising from Vital's tortious conduct because Vital was acting within the scope of his employment when he took advantage of, and misused, his power and authority as a law enforcement officer. Appellants further argue that the County deprived appellants of their constitutional rights by failing to properly train and supervise Vital.

As outlined below, the trial court correctly dismissed appellants' complaint. As a matter of law, Vital was not acting within the scope of his employment when he wrote fake letters to jail inmates and attributed them to Paul Perry. While Vital's employment as a correctional officer gave him access to the necessary information, the act of writing the letters was independent from his employment and purely personal. Further, appellants did not establish an underlying constitutional violation related to the County's official policy or custom. Accordingly, the judgment is affirmed.

## BACKGROUND

Vital was employed by the County as a correctional officer. In 2005, Vital was assigned to the position of records officer I at the county jail. As such, it was Vital's job to process paperwork concerning jail inmates, including paperwork for the release of inmates from custody and the transfer of inmates to other correctional facilities and agencies. In order to perform these tasks, Vital had full access to the correctional management computer system.

2.

In February 2005, Paul Perry and Felicia Davis Perry were injured in an automobile accident involving a vehicle owned by Vital and driven by his stepson, Austin Villa. In July 2005, the Perrys filed a personal injury lawsuit against Villa and Vital. In August 2005, Vital was notified that he was obligated to pay the Perrys' medical bills, because Vital's insurance company had refused to cover these expenses because Villa was excluded on Vital's policy.

In August 2005, Vital began writing false and threatening letters in an effort to scare Paul Perry into dropping the lawsuit or leaving the area. Vital used his access to the County's correctional management computer system to obtain the necessary information and addresses.

The first letter written by Vital was sent to Paul Perry and was purportedly from Ralph Prickett, a county jail inmate. After the Perrys discovered who Ralph Prickett was, they reported the letter to the sheriff's department. Thereafter, Sergeant John Copher informed the Perrys that Prickett had been contacted and had denied knowing Paul Perry or writing the letter.

In March 2006, the Perrys' personal injury lawyer sent a letter to Vital offering to settle the lawsuit against him for $390,000. Shortly thereafter, Paul Perry received a phone call from Fresno High School informing him that the school had received an anonymous letter. The author of this letter accused Perry of molesting him when he played basketball at Fresno High while Perry was coaching. Perry denied these allegations and obtained a copy of the letter and envelope.

In April 2006, Paul Perry received a letter that had been addressed to a county jail inmate but was returned to Perry's address as undeliverable. This letter, which was purportedly written by Perry, contained racially inflammatory remarks directed toward the inmate. Perry reported this letter and the prior incidents to a correctional officer with whom Perry was previously acquainted and an investigation ensued.

3.

Thereafter, the mail room at the county jail was instructed to intercept any letters that had Paul Perry's return address. Over the next month or so, five such letters addressed to five different inmates were intercepted. Each letter contained racial and other inflammatory comments directed toward the respective inmate.

In June 2006, Paul Perry's cousin, Paul Espinoza, was confronted by members of a street gang known as the Muhammad family. These gang members believed Espinoza was Paul Perry. They stated they had been receiving letters from Paul Perry for the past six months and were going to "'do a drive-by'" at Orene Perry's house. Orene Perry is Paul Perry's mother. After this event was reported to the investigating officers, these officers learned that a letter addressed to a jail inmate, believed to be a member of the Muhammad family, had recently been intercepted by the jail staff.

Shortly thereafter, the investigating officers conducted recorded interviews with Vital. Vital admitted to writing all of the letters to the jail inmates and to the members of the Muhammad family, as well as the letter to Fresno High School. Vital stated that when he was working in the records section of the jail, he found information about dangerous inmates through the jail's computer system. Vital also confirmed Paul Perry's addresses through this computer system.

The County terminated Vital's employment. Vital was then criminally charged with identity theft, using a computer system to commit fraud or extortion, and attempting to prevent and dissuade a witness and victim from testifying. (Pen. Code, §§ 530.5, subd. (a), 502, subd. (c), and 136.1, subd. (a)(2).) Vital was convicted of all three felonies on his no contest plea.

Appellants filed the operative third amended complaint against the County alleging both state law tort and federal civil rights causes of action. The County responded by demurrer. The trial court overruled the demurrer as to the tort claims for intentional infliction of emotional distress and invasion of privacy, but sustained the demurrer to the alleged civil rights violations. These claimed civil rights violations were

4.

based on allegations that the County failed to properly train and supervise Vital and that this failure was closely related to appellants' injuries. The court concluded that appellants failed to set forth sufficient facts regarding both the alleged inadequacy of the County's training program and how this alleged inadequacy was the proximate cause of the harm suffered by appellants.

Thereafter, the County moved for summary judgment on the tort causes of action. The County argued that it could not be held vicariously liable for Vital's actions because his conduct was outside the scope of his employment with the County.

The trial court granted the motion. The court found that the underlying dispute (the personal injury action and settlement demands), that led Vital to deviate from his job duties by accessing confidential and official jail records to determine which inmates to target with his letters, was not an "'outgrowth'" of his employment. Further, the conduct at issue did not involve any attempt to exercise authority over the public. Accordingly, the court ruled that the County could not be held vicariously liable as a matter of law.

## DISCUSSION

I. THE TRIAL COURT PROPERLY GRANTED SUMMARY JUDGMENT ON APPELLANTS' TORT CAUSES OF ACTION.

Since the tort causes of action for emotional distress and invasion of privacy were dismissed following the grant of summary judgment, we review the trial court's ruling de novo. (*American Internat. Specialty Lines Ins. Co. v. Continental Casualty Ins. Co.* (2006) 142 Cal.App.4th 1342, 1357.) In doing so, we must strictly construe the defendant's supporting documents and liberally construe the plaintiffs' documents and determine whether the defendant has negated an essential element of the plaintiffs' cause of action or established the nonexistence of any triable issue of material fact, such that the defendant is entitled to judgment as a matter of law. (*Baroco West, Inc. v. Scottsdale Ins. Co.* (2003) 110 Cal.App.4th 96, 99-100.)

5.

Under the respondeat superior doctrine, an employer is liable for the torts of its employees committed within the scope of the employment. (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296 (*Lisa M.*).) An employee's willful, malicious and even criminal torts may fall within the scope of his or her employment, even though the employer did not authorize the employee to commit crimes or intentional torts. (*Id*. at pp. 296-297.) Although the question of whether a tort was committed within the scope of employment is ordinarily one of fact, it becomes one of law where the undisputed facts would not support an inference that the employee was acting within the scope of employment. (*John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 447.) The burden is on the plaintiff to prove that the employee's tortious conduct was committed within the scope of employment. (*Mary M., supra,* 54 Cal.3d at p. 209.)

Despite the broad range of acts that may give rise to the imposition of vicarious liability, before such liability will be imposed on the employer there must be a connection between the employee's intentional tort and the employee's work. The tort in this case is not simply the improper use of information obtained from the County's computer system, but the use of that information by Vital for illegal personal purposes. The law is clear that an employer is not strictly liable for all actions of its employees during working hours. (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1004 (*Farmers*).) Rather, there must be a causal nexus between the tort and the employee's work, i.e., the tort (the letters) must be engendered by or arise from the work. (*Lisa M., supra,* 12 Cal.4th at pp. 297-298.) "That the employment brought tortfeasor and victim together in time and place is not enough." (*Id*. at p. 298.) "'[B]ut for'" causation is insufficient. (*Ibid.*)

For a causal nexus to exist "the incident leading to injury must be an 'outgrowth' of the employment [citation]; the risk of tortious injury must be "'inherent in the working environment'" [citation] or "'typical of or broadly incidental to the enterprise [the

6.

employer] has undertaken [citation].""" (*Lisa M., supra,* 12 Cal.4th at p. 298.) In other words, the risk of the tort must be a generally foreseeable consequence of the enterprise. (*Id*. at p. 300.) If the employee acts out of personal malice unconnected with the employment, the employee is not acting within the scope of employment. (*Farmers, supra,* 11 Cal.4th at p. 1005.) The mere fact that an employee has an opportunity to abuse facilities or authority necessary to the performance of that employee's duties does not render the employer vicariously liable. (*Id*. at p. 1006.) A tort will not be considered engendered by the employment unless its motivating emotions were fairly attributable to work-related events or conditions. (*Lisa M., supra,* at p. 301.) An employee who abuses job-created authority over others for purely personal reasons is not acting within the scope of employment. (*Farmers, supra,* at p. 1013.)

Here, Vital's dispute with appellants had absolutely no connection to Vital's employment. The underlying events, the automobile accident and the resulting personal injury action, were not work-related. While Vital's employment as a correctional officer gave him access to the information he needed to carry out his fake letter writing scheme, respondeat superior requires more than such "but for" causation. Vital wrote the fake letters in an attempt to persuade the Perrys to drop their non-work-related personal injury action against him. The motivation behind this scheme was not generated by, or an outgrowth of, workplace responsibilities, conditions or events. Rather, Vital's endeavor was purely personal. Accordingly, Vital's wrongful tort was outside the scope of his employment.

Appellants argue that the County is vicariously liable because Vital's misconduct arose from his abuse of law enforcement authority. In support of their position, appellants rely on *Mary M.*

In *Mary M.*, a uniformed police officer in a marked car detained the plaintiff, who was driving alone, and gave her a field sobriety test. The plaintiff did not do well on the test and pleaded with the officer to not take her to jail. In response, the officer ordered

7.

the plaintiff to get in the front seat of the police car.  The officer then drove the plaintiff to her home where he raped her.  (*Mary M., supra,* 54 Cal.3d at p. 207.)

Under these facts, the California Supreme Court held that when "a police officer on duty misuses his official authority by raping a woman whom he has detained, the public entity that employs him can be held vicariously liable."  (*Mary M., supra,* 54 Cal.3d at p. 221.)  To determine if the police officer was acting outside the scope of employment, the court considered "whether '"in the context of the particular enterprise [the] employee's conduct [was] not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business."'"  (*Id.* at p. 214.)[1]  The court also considered whether imposing vicarious liability would further the three policy justifications for the respondeat superior doctrine: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury."  (*Id.* at p. 209.)

In applying this test, the *Mary M.* court observed that society has granted police officers extraordinary power and authority over its citizenry and concluded that, in view of this considerable power and authority, "it is neither startling nor unexpected that on occasion an officer will misuse that authority by engaging in assaultive conduct."  (*Mary M., supra,* 54 Cal.3d at p. 217.)  However, the court expressly limited its holding and stressed that its conclusion in *Mary M.* "flows from the unique authority vested in police officers.  Employees who do not have this authority and who commit sexual assaults may

---

[1]    As more clearly stated, "'the inquiry should be whether the risk was one "that may fairly be regarded as typical of or broadly incidental" to the enterprise undertaken by the employer.  [Citation.]'  [Citation.]  Accordingly, the employer's liability extends beyond his actual or possible control of the employee to include risks inherent in or created by the enterprise.  [Citation.]"  (*Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968.)

be acting outside the scope of their employment as a matter of law." (*Id*. at p. 218, fn. 11.)

In later cases, the California Supreme Court has continued to limit *Mary M.* to its specific facts. In *Farmers*, the court noted that *Mary M.* "did not suggest that an employer may be vicariously liable for an employee's misconduct whenever there is an abuse of a job-created, hierarchical relationship in which the employee is afforded a high degree of authority over the victim." (*Farmers, supra,* 11 Cal.4th at pp. 1012-1013.) Rather, the liability in *Mary M.* flowed "'from the unique authority vested in police officers.'" (*Id*. at p. 1013.) Similarly, in *Lisa M.*, the court explained that "[w]hile a police officer's assault may be foreseeable from the scope of his unique authority over detainees, we are unable to say the same of an ultrasound technician's assault on a patient." (*Lisa M., supra,* 12 Cal.4th at p. 304.)

Appellants argue they fall within *Mary M.* because Vital's misconduct arose from the abuse of his authority as a law enforcement officer. The County counters that Vital was a correctional officer, not a law enforcement officer. However, whether Vital is classified as a law enforcement officer or not is immaterial. The power or privilege that Vital abused, i.e., his access to the correctional management computer system, is totally different from the unique and formidable power and authority police officers have over members of the public or people under their control. Vital had no authority or control over appellants. As courts have noted, "'police officers [exercise] the most awesome and dangerous power that a democratic state possesses with respect to its residents -- the power to use lawful force to arrest and detain them.'" (*Mary M., supra,* 54 Cal.3d at p. 216.) This is not the case with a correctional officer who processes paperwork and has access to a jail computer system.[2] Rather in this context, the criminal conduct underlying

---

[2] At oral argument, appellant's counsel admitted there was no practical difference between gathering the inmate information from the jail's computer system and from files maintained in jail file cabinets.

appellants' action, namely the illegal act of writing the letters using the information gathered from the jail computer system for totally non-work-related purposes, must be considered unusual or startling.

Further, the three policy justifications for the respondeat superior doctrine do not justify holding the County vicariously liable. Although vicarious liability would give greater assurance of compensation for appellants, the victims, it would not act to prevent recurrence of the tortious conduct. Vital needed access to the information contained in the correctional management computer system to do his job. The County already has policies in place that prohibit the dissemination or malicious access of this information and subject an employee to termination for misuse of the information. Thus, it is unlikely that the adoption of vicarious liability in this situation would be beneficial. (Cf. *Lisa M., supra,* 12 Cal.4th at p. 304.) The third policy consideration--- ensuring that the victim's losses will be equitably borne by those who benefit from the enterprise, is merely another way of asking "whether the employee's conduct was 'so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.'" (*Id.* at p. 305.) As discussed above, Vital's endeavor was entirely personal and, in the context of Vital's job, his conduct was unusual and startling.

Appellants' reliance on *McDade v. West* (9th Cir. 2000) 223 F.3d 1135 (*McDade*), is also misplaced. In *McDade,* a county employee illegally used a confidential database that she had access to through her employment to find the address of her husband's ex-wife, who was secretly living at a women's shelter for her protection from an unrelated third party. Using the confidential address, the employee's husband then served papers on his ex-wife at that address. The court held that the employee who accessed the confidential information was acting "under color of state law" and therefore the ex-wife could pursue her 42 U.S.C. section 1983 (section 1983) action. (*McDade, supra,* at p. 1141.)

In contrast here, the issue is not whether Vital was acting under color of state law when he illegally obtained information from the jail's computer system, but whether Vital was acting within the scope of his employment when he committed the later intentional torts. An act under color of state law requires that the officer be acting, purporting, or pretending to act in the performance of his or her official duties. (*McDade, supra,* 233 F.3d at p. 1140.) The misconduct underlying appellants' complaint was not Vital's act of accessing the confidential information in the performance of his official duties, but the act of writing and mailing the fraudulent letters.

In sum, Vital's tortious conduct was not an outgrowth of his employment. It was a personal endeavor that was totally unrelated to his job. That the employment gave Vital access to information needed to carry out his scheme is insufficient to create a causal nexus between the tort and Vital's work. Accordingly, Vital's acts fell outside the scope of his employment. Because the material facts are undisputed, the trial court correctly found the County was not vicariously liable as a matter of law.

## II. THE TRIAL COURT PROPERLY SUSTAINED THE COUNTY'S DEMURRER TO THE THIRD CAUSE OF ACTION ALLEGING CIVIL RIGHTS VIOLATIONS.

Because we are reviewing a ruling on a demurrer, our only task is to determine whether the properly pleaded material facts state a cause of action against the County for civil rights violations as a matter of law. (*Gentry v. eBay, Inc.* (2002) 99 Cal.App.4th 816, 824.)

Appellants contend that the third cause of action properly sets forth a section 1983 cause of action against the County under *Monell v. New York City Dept. of Social Services* (1978) 436 U.S. 658 (*Monell*). Section 1983 imposes civil liability on a person acting under color of state law who deprives a person of a federal constitutional or statutory right. (*Cooper v. Dupnik* (9th Cir. 1991) 924 F.2d 1520, 1526.) In *Monell*, the court held that a government entity could not be sued under section 1983 for an injury

inflicted solely by its employees or agents. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [section] 1983." (*Monell, supra,* at p. 694.)

Four conditions must be satisfied in order to establish government liability for failing to act to preserve a constitutional right under *Monell*. The plaintiff must establish that: (1) the plaintiff was deprived of a constitutional right; (2) the government entity had a policy; (3) this policy amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. (*Van Ort v. Estate of Stanewich* (9th Cir. 1996) 92 F.3d 831, 835.)

In their section 1983 cause of action against the County, appellants allege that the County's training and supervision policies amounted to deliberate indifference to the constitutional rights of persons with whom its peace officers were likely to come in contact. Specifically, appellants allege that the County did not supervise its employees to insure that the confidential information contained in the County's computers was not misused to violate the civil rights of individuals. Appellants further contend that the County's failure to discipline Sergeant Copher after Copher failed to properly conduct an investigation into the allegations of Vital's wrongdoing evidenced a failure to train and supervise Copher. According to appellants, if the County had properly trained and supervised its peace officers, appellants' constitutional injury would have been avoided.

However, appellants' section 1983 cause of action against the County does not allege what constitutional right the County violated. An award of damages against a government entity in a *Monell* action requires constitutional harm. (*City of Los Angeles v. Heller* (1986) 475 U.S. 796, 799.) Based on the absence of this element of a *Monell* claim, the trial court properly sustained the County's demurrer to the section 1983 cause of action.

12.

On appeal, appellants argue the underlying constitutional violation was their right to access to the courts without intimidation or threat from individuals acting under color of law. However, appellants do not claim that they were in fact denied access to the courts. While Vital attempted to intimidate appellants into dropping their personal injury action, there is no indication that appellants did so.

Moreover, appellants' access to the courts to prosecute their civil action is not constitutionally protected. The right to access to the courts under the Due Process Clause assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights. (*Wolff v. McDonnell* (1974) 418 U.S. 539, 579.) Appellants were pursuing state tort claims against Vital for personal injuries. Violations of duties of care arising out of tort law are not violations of rights protected by the Constitution. (*Baker v. McCollan* (1979) 443 U.S. 137, 146.) Thus, appellants have not met their burden of demonstrating how the defect in their complaint could be cured.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

_____
Franson, J.

WE CONCUR:


_____
Levy, Acting P.J.


_____
Gomes, J.

13.