Filed 6/3/21  Popescu v. Cal. Highway Patrol CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

|  |  |
|---|---|
| SORIN POPESCU et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CALIFORNIA HIGHWAY PATROL et al., <br><br> Defendants and Respondents. | 2d Civil No. B306287 <br> (Super. Ct. No. 56-2018-00520506-CU-CR-VTA) <br> (Ventura County) <br><br> ORDER MODIFYING OPINION <br> [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on June 2, 2021, be modified as follows:

The counsel page of the opinion, in the last paragraph starting with "Xavier Becerra" at the end of the counsel listing, delete the word "Plaintiff" and insert "Defendants," and add an "s" to the word "Respondent."  Should now read "for Defendants and Respondents."

No change in judgment.

_____

GILBERT, P.J.            YEGAN, J.            PERREN, J.

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| SORIN POPESCU et al., | 2d Civil No. B306287 |
| Plaintiffs and Appellants, | (Super. Ct. No. 56-2018-00520506-CU-CR-VTA) |
| v. | (Ventura County) |
| CALIFORNIA HIGHWAY PATROL et al., | |
| Defendants and Respondents. | |

A drunk and off-duty California Highway Patrol (CHP) officer shot Sorin Popescu in the back while Popescu was standing in the entry way of his own home.  Popescu, his wife and their children (appellants) conclusionally allege in their second amended complaint that the officer, Trever Dalton, was acting in the course and scope of his employment at the time.  They further allege that the CHP is liable for Dalton's unjustified use of force and for its negligent failure to train, supervise and discipline Dalton.  The trial court sustained the CHP's demurrer to their second amended complaint without leave to amend.  Appellants

contend the trial court erred when it concluded their complaint failed to state a cause of action against the CHP and when it denied them leave to file a third amended complaint. We affirm.

FACTS

In December 2017, the Thomas Fire destroyed or damaged numerous residences and caused widespread power outages in Ventura. Appellants lived on a cul-de-sac in a neighborhood that lost power. As the family was trying to decide whether to evacuate, appellant Sorin Popescu heard a noise from the house next door. He went to investigate, worried someone might be looting his neighbor's house. Once outside, appellant encountered Dalton, approaching the neighbor's door.

Dalton was employed as a California Highway Patrol (CHP) officer. He is not alleged to have been in uniform, driving a marked black and white CHP car, or to have displayed a badge or other identification. Popescu asked Dalton who he was. Popescu decided Dalton was drunk and told him to leave. Instead of leaving, Dalton started questioning Popescu about his identity and where he lived. He became increasingly aggressive with Popescu. He repeatedly told Popescu that he was a cop and was carrying a gun.

Dalton was riding a bicycle. As the two men exchanged words in the street, Dalton rode the bike in circles around Popescu, eventually hitting him in the leg with the wheel. Popescu grabbed the handlebars and pushed the bicycle away. This caused the intoxicated Dalton to fall off the bike. He began yelling that Popescu had assaulted him.

Popescu retreated and called 911. He told the operator about Dalton's behavior including his claim that he was a police officer and that he said he had a gun. Dalton continued

to make threatening statements while Popescu was on the phone. He said Popescu didn't need to call the police because Dalton was the police. At one point during the interaction, Dalton used his phone to take a picture of the license plate on Popescu's car.

Popescu returned to his house and talked with his wife about the conflict with Dalton. Meanwhile, Dalton had a confrontation with another neighborhood resident, Cason White. Dalton asked White, who was standing outside with his son, whether White was calling the police. He said White should call the police because, "'it's about to go down'" and then Dalton pulled a gun from an ankle holster. White went into his house to call 911.

While White was calling 911, Popescu was standing inside his house, near the open front door, talking to his wife with his back to the street. Dalton walked up the driveway toward the front door. Neighbors heard Dalton say, "'put your gun down.'" Popescu was not armed and had not been at any point during his confrontation with Dalton. Dalton fired two shots, one of which hit Popescu in the back.

Popescu suffered severe injuries and spent five days in the hospital. Dalton was taken into custody and charged with firearms and assault offenses.

About three months before the shooting, in September 2017 one of Dalton's neighbors called the CHP office in Ventura to complain about his behavior in the neighborhood. The neighbor reported that, while intoxicated, Dalton walked around the neighborhood holding a live rooster and asking people, "'do you want to pet my cock.'" Dalton would also stand in the street at night and stop passing motorists for no reason. Dalton's co-workers reported that he "'drunk-dialed'" them and

3

made inappropriate and unprofessional comments to them. The supervisors referred Dalton to the employee assistance program to address these issues and his admitted alcohol consumption practices.

PROCEDURAL HISTORY

Appellants' first and second amended complaints attempted to allege causes of action for assault and battery, intentional and negligent infliction of emotional distress, negligence, negligent supervision, training and discipline, violation of the Bane Act (Civ. Code, § 52.1), and violation of civil rights, 42 U.S.C. § 1983. Both pleadings alleged the CHP was vicariously liable for Dalton's misconduct because he was acting within the course and scope of his employment when he shot Popescu. In support of this conclusion, appellants alleged that: Dalton carried a concealed, loaded firearm during the incident; he repeatedly invoked his status as a police officer; he photographed the license plate on Popescu's car and asked questions as if he was investigating something; and he gave commands to Popescu as if he was preparing to arrest Popescu. Appellants further alleged the shooting occurred during a state of emergency declared by the governor due to the Thomas Fire. During the state of emergency, all law enforcement officers were deemed to be on-duty at all times. Appellants also alleged that officers are authorized at all times to carry out law enforcement functions such as making arrests. (See, e.g., Pen. Code, §§ 836, 25450, 25900; Veh. Code, § 2253.)

In addition to its respondeat superior vicarious liability theory, appellants alleged the CHP is directly liable for its own negligent training, supervision and discipline of Dalton. In support of this theory, appellants alleged that Dalton's

4

supervisors were aware, before the shooting occurred, that Dalton had a drinking problem. Supervisors were also aware that Dalton's neighbors had complained to the CHP that he behaved in intimidating and unprofessional ways in the neighborhood. He also made inappropriate comments to neighbors and to co-workers. The CHP had referred Dalton to its Employee Assistance Program for counselling.

The CHP's demurrers argued appellants could not allege a cause of action against it on a respondeat superior theory because Dalton was off-duty and not acting within the course and scope of his employment when the shooting occurred. The CHP contended it had no direct liability for failure to supervise Dalton because it had no special relationship with appellants.

In sustaining the demurrer to appellants' first amended complaint, the trial court noted, "All of the factual allegations plead[ed] are of an off-duty officer." Dalton appeared to be drunk, was not in uniform and was not using a CHP vehicle. Although he referred to himself as a "cop," Dalton did not identify the agency he worked for or display a badge. Popescu's actions reflected that he did not believe Dalton was acting as a peace officer. For example, Popescu told Dalton to leave and did not answer his questions. He pushed the handlebars of Dalton's bike. Popescu walked away from Dalton while Dalton was asking him questions. Because the factual allegations did not establish Dalton was acting within the scope of his employment when he shot Popescu, the trial court concluded the complaint failed to state a cause of action against the CHP.

Appellants amended their complaint to allege additional facts in support of their claim that Dalton was acting within the course and scope of his employment. They also added

5

causes of action alleging the CHP and Dalton's supervisors were negligent in their supervision, training and discipline of Dalton. Respondents again demurred on the grounds that Dalton was not acting within the course and scope of his employment.  They contended the CHP had no direct liability for negligence because it had no special relationship with appellants.  The trial court agreed with respondents and sustained their demurrer without leave to amend.

## STANDARD OF REVIEW

We review the second amended complaint "de novo to determine whether [it] alleges facts sufficient to state a cause of action under any legal theory or to determine whether the trial court erroneously sustained the demurrer as a matter of law." (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 595.)  "In doing so, we treat the demurrer as admitting all material facts properly pleaded." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 866.)  The complaint is to be given a reasonable interpretation and is read as a whole, with all its parts in context.  (*Ibid.*)

## DISCUSSION

### *Vicarious Liability*

"A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."  (Gov. Code, § 815.2, subd. (a).)  Under the doctrine of respondeat superior, summarized in this statute, "an employer may be held vicariously liable for torts committed by an employee within the scope of employment."  (*Mary M. v. City of Los Angeles* (1991) 54

Cal.3d 202, 208 (*Mary M.*).)  Intentional torts and criminal acts may fall within the scope of the tortfeasor's employment, even if the employer did not authorize the employee to commit those acts.  (*Id.* at p. 209; *Perry v. County of Fresno* (2013) 215 Cal.App.4th 94, 101 (*Perry*).)[1]

The risk that an employee will commit an intentional tort or crime "'arises out of employment'" when ""*in the context of the particular enterprise* an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.  [Citations.]  In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one 'that may fairly be regarded as typical of or broadly incidental' *to the enterprise undertaken by the employer.*  [Citation.]" [Citation.]  Accordingly, the employer's liability extends beyond his actual or possible control of the employee to include *risks inherent in or created by the enterprise.*'"  (*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1003 (*Farmers Ins. Group*), quoting *Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968 (*Perez*).)

By contrast, "vicarious liability is deemed inappropriate where the misconduct does not arise from the conduct of the employer's enterprise but instead arises out of a personal dispute [citations].  In such cases, the risks are engendered by events unrelated to the employment, so the mere

---

[1] Nothing in *Inouye v. County of Los Angeles* (1994) 30 Cal.App.4th 278, compels reversal.  There, the court held only that the County's "policy of deeming its off-duty safety police officers to not be engaged in the performance of their duties is ineffective to insulate the County from respondeat superior liability . . . ."  (*Id*. at p. 280.)  No written policy is here at issue.

fact that an employee has an opportunity to abuse facilities or authority necessary to the performance of his or her duties does not render the employer vicariously liable." (*Farmers Ins. Group, supra,* 11 Cal.4th at p. 1006.)

*Mary M., supra,* 54 Cal.3d 202 and *Perry, supra,* 215 Cal.App.4th 94 illustrate this distinction. In *Mary M.,* a police officer who was on duty, in uniform and driving a patrol car, detained Mary M. using the red lights on his patrol car. He ordered her into the car and drove her to her home, where he pushed her onto her couch. When Mary M. screamed, the officer threatened to take her to jail. Then the officer raped her. (*Mary M., supra,* at p. 221.) Our Supreme Court held a jury could find the officer was acting in the course of his employment because he used the authority given to him by his employer to commit the rape. (*Id.* at pp. 207, 221.)

In *Perry* by contrast, a corrections officer at the county jail got into a car accident while he was off duty, driving his own car. Perry was injured in the accident and sued the officer. The officer used jail computers to find the mailing addresses of inmates. He then wrote threatening letters to the inmates, in Perry's name, hoping to provoke inmates into retaliating against Perry and intimidating him into dropping the lawsuit. The court of appeal found no causal nexus between the officer's employer and his letter writing scheme because the officer's dispute with Perry "had absolutely no connection to [the officer's] employment." (*Perry, supra,* 215 Cal.App.4th at p. 102.) The car accident and resulting lawsuit "were not work related." (*Ibid.*) Although the officer had access to inmates' personal information through his work, "[t]he motivation behind [his] scheme was not generated by, or an outgrowth of, workplace

responsibilities, conditions or events. Rather, [the officer's] endeavor was purely personal. Accordingly, [the officer's] wrongful tort was outside the scope of his employment." (*Ibid.*)

In *Mary M.*, the rapist encountered, detained, transported and subdued his victim by (mis)using the weapons, uniform, vehicle and other features of law enforcement authority provided to him by his employer. In *Perry*, the tortfeasor obtained information through his employer that he then used to intimidate his opponent in a dispute that was unrelated to his employment.

The question here is whether appellants have sufficiently alleged a causal nexus between Dalton's criminal act and his employment as a CHP officer. Like the trial court, we conclude they have not. Dalton's violence toward Popescu had nothing to do with his employment. Dalton was not driving a CHP car, was not being paid by the CHP at the time of the shooting, and was not enforcing the California Vehicle Code. He was riding his bicycle around a residential neighborhood while drunk. There is no allegation that Dalton claimed to be investigating a crime or performing a public safety function such as warning residents about the Thomas Fire or encouraging them to evacuate. When Popescu asked Dalton what he was doing, Dalton started to argue with him. He said he was a cop and that he had a gun, but never displayed a badge or identified his employer. He was not in uniform. There is no allegation that Dalton verbally threatened to arrest Popescu or told Popescu he was under arrest. When Popescu walked away from him, Dalton did not immediately follow or order him to stop. Instead, he started arguing with another neighborhood resident. Even as he walked up the pathway to appellants' front door with his weapon

9

drawn, Dalton did not announce himself as a police officer. He said, "drop your gun," and then fired. There is no allegation that Dalton used a CHP issued firearm.

Appellants' second amended complaint alleges facts that describe a "personal dispute" Dalton created with an innocent resident, not misconduct in the exercise of his law enforcement responsibilities or authority. (*Farmers Ins. Group, supra,* 11 Cal.4th at p. 1006; *Perry, supra*, 215 Cal.App.4th at p. 102.) The risk that an officer would get drunk, start an argument with a stranger and then shoot that person is not one ""that may fairly be regarded as typical of or broadly incidental" to the enterprise undertaken by [the CHP]. [Citation.]"" (*Perez, supra*, 41 Cal.3d at p. 968.) Because Dalton's confrontation with Popescu was not generated by, or an outgrowth of, his workplace responsibilities, Dalton's shooting of Popescu was outside the scope of his employment.

Appellants contend the trial court placed too much emphasis on the fact that Dalton was "off duty" when the shooting occurred. They note Dalton was technically on duty because of the fire-induced state of emergency. We agree that Dalton's on-duty or off-duty status is not dispositive. As we have explained, the dispositive question is whether there is "a causal nexus between the tort and the employee's work, i.e., the tort (the [shooting]) must be engendered by or arise from the work." (*Perry, supra,* 215 Cal.App.4th at p. 101; see also *Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 297-298.) That causal nexus is absent here, without regard to Dalton's on or off-duty status, because his confrontation with Popescu was not related to CHP work responsibilities.

*Direct Liability*

Appellants allege the CHP and Dalton's supervisors were aware of his abusive drinking and aggressive, unprofessional behavior toward civilians and toward his co-workers. Respondents failed to protect the public from Dalton's growing dangerousness by referring him to voluntary counseling rather than disciplining him, suspending him or requiring him to complete a mandatory counseling or substance abuse program. Appellants allege respondents' negligent failure to train, supervise or discipline Dalton were a proximate cause of their damages. They allege respondents are directly liable for their negligence in training, supervising and disciplining Dalton.

"Except as otherwise provided by statute: [¶] (a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (Gov. Code, § 815.) The direct tort liability of a public entity "must be based on a specific statute declaring [the public entity] to be liable, or at least creating some specific duty of care, and not on the general tort provisions of Civil Code section 1714. Otherwise, the general rule of immunity for public entities would be largely eroded by the routine application of general tort principles." (*Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1183 (*Eastburn*); see also *de Villers v. County of San Diego* (2007) 156 Cal.App.4th 238, 247 (*de Villers*).)

No statute imposes direct liability on the CHP or its supervisory employees for negligence in the training, supervision or discipline of an officer. Similarly, no statute imposes on the CHP a specific duty of care to the general public relating to the training, supervision or discipline of officers. (*Munoz v. City of*

11

*Union City* (2004) 120 Cal.App.4th 1077, 1112-1113, disapproved on other grounds in *Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 639.) Finally, appellants allege no facts suggesting that respondents "under[took] a special protective relationship toward" appellants. (*de Villers*, *supra*, 156 Cal.App.4th at p. 249.) Respondents are not alleged to have encouraged Dalton to harass his neighbors, acted to increase the risk that he would do so, or increased residents' vulnerability to his violent outbursts. (*M.B. v. City of San Diego* (1991) 233 Cal.App.3d 699, 706.) The second amended complaint thus fails to allege a cause of action for negligence against respondents. The trial court correctly sustained the demurrer to the fourth and fifth causes of action.

Appellants argue that respondents improperly withheld from the discovery process Dalton's mental health records. These records are relevant, appellants contend, because they demonstrate respondents' knowledge of, and negligent failure to protect appellants from Dalton's mental health and addiction issues. Because we have concluded appellants cannot, as a matter of law, allege causes of action for negligence against respondents, we need not address these contentions.

*Violation of Civil Code § 52.1*

Appellants' sixth cause of action alleges Dalton violated the Bane Act (Civ. Code, § 52.1)[2] because he shot

---

[2] Civil Code section 52.1, subdivision (b) provides, "If a person or persons, whether or not acting under color of law, interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney

12

Popescu while attempting to arrest him without probable cause, in violation of the Fourth Amendment. Appellants further allege the CHP is liable for damages associated with Dalton's misconduct because he was acting in the course and scope of his employment when he shot Popescu.

The Bane Act does not create direct liability on the part of a state agency for an employee's conduct that violates constitutional or statutory rights. As a result, appellants fail to allege a cause of action against the CHP for violation of the Bane Act. (Gov. Code, § 815; *Eastburn*, *supra*, 31 Cal.4th at p. 1183.) In addition, for the reasons we have already stated, appellants fail to allege facts showing respondents' vicarious liability for Dalton's conduct. For these reasons, the trial court correctly sustained the demurrer with respect to appellants' sixth cause of action.

Respondents further contend the demurrer was properly sustained because the complaint does not allege Popescu believed Dalton was actually a police officer, or believed himself to be under arrest prior to the shooting. (*Brendlin v. California*

---

General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured." Subdivision (c) of the statute allows a person "whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with" to file an action for damages or equitable relief against the interfering person.

13

(2007) 551 U.S. 249 [seizure of a person for purposes of the Fourth Amendment occurs when, in light of surrounding circumstances, a reasonable person would believe he or she was not free to leave]; *Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 959 [Bane Act requires allegation of threatening conduct independent of alleged interference with or violation of civil rights].)  We need not address these contentions because we have concluded the demurrer was properly sustained on other grounds.

*Leave to Amend*

Appellants contend the trial court abused its discretion when it denied them leave to file their proposed Third Amended Complaint.  The proposed amended complaint would have added factual allegations relating to the CHP and the supervisors' knowledge of Dalton's substance abuse, mental health challenges and prior misconduct.  Appellants would also allege that Dalton was on duty at the time of the shooting, because of the state of emergency and that, when he shot Popescu, Dalton was using police powers to effect an unlawful arrest.

We review the trial court's order denying leave to amend for abuse of discretion.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)  "Failure to grant leave to amend constitutes an abuse of discretion only if there is a reasonable possibility that the defect can be cured by amendment."  (*Schmid v. City and County of San Francisco* (2021) 60 Cal.App.5th 470, 496.)  Leave to amend is properly denied where the proposed amendment fails to state a cause of action.  (*Graham v. Bank of America, N.A.* (2014) 226 Cal.App.4th 594, 618-619.)  In addition, "'[a] plaintiff may not avoid demurrer by pleading facts or positions in an amended

14

complaint that contradict the facts pleaded in the original complaint or by suppressing facts which prove the pleaded facts false. [Citation.]'" (*McAllister v. Los Angeles Unified School Dist.* (2013) 216 Cal.App.4th 1198, 1206–1207, quoting *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 877; see also *Astenius v. State of California* (2005) 126 Cal.App.4th 472, 476–477 (*Astenius*).)

The trial court here properly denied leave to amend because appellants' proposed amendment would not cure the defects in their current pleadings. Additional allegations regarding respondents' knowledge of Dalton's drinking problem or mental health concerns does not establish a special relationship between respondents and appellants. Without such a relationship, respondents had no duty to protect appellants and, therefore, no direct liability for negligence.

Similarly, the allegation that Dalton was on duty and attempting unlawfully to arrest Popescu when he fired his weapon does not cure the defect in the vicarious liability claims. The factual allegations describe a confrontation that was not work related and had no connection to Dalton's employment. Concluding this was an attempt to make an unlawful arrest directly contradicts those factual allegations. Leave to amend may properly be denied when the proposed amendment contradicts admission made in the original pleadings. (*Astenius, supra,* 126 Cal.App.4th at p. 477.)

CONCLUSION

The picture that emerges, even at the pleading state, is clear. Dalton had a drinking problem and was drunk when he shot Popescu. This was a private dispute. That Dalton said he was a cop with a gun does not make the CHP liable for the

15

shooting.  The CHP has no liability for a shooting having no causal nexus to CHP duties.  And, finally, what we said in *People v. McNally* (2015) 236 Cal.App.4th 1419, 1423-1424, bears repetition:  firearms and alcohol do not mix.

The judgment is affirmed.  Costs to respondents.

<u>NOT TO BE PUBLISHED.</u>


YEGAN, J.


We concur:


GILBERT, P. J.


PERREN, J.


16

Mark S. Borrell, Judge

Superior Court County of Ventura

_____

Andrew M. Wolf, for Plaintiffs and Appellants.

Xavier Becerra and Rob Bonta, Attorneys General, Danielle F. O'Bannon, Senior Assistant Attorney General, Pamela J. Holmes, Supervising Deputy Attorney General, Shirley R. Sullinger, Deputy Attorney General, for Plaintiff and Respondent.