Filed 10/31/23  Sarno v. Kaiser Foundation Health Plan CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN SARNO et al., | |
| Plaintiffs and Appellants, | G061368 |
| v. | (Super. Ct. No. 30-2017-00942737) |
| KAISER FOUNDATION HEALTH PLAN, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Nancy E. Zeltzer and Michael J. Strickroth, Judges; Richard J. Oberholzer, Judge (retired judge of the Kern County Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.).  Affirmed.

Neasham & Kramer, Patricia Kramer and Chad A. Vierra for Plaintiffs and Appellants.

Buty & Curliano, Jason J. Curliano, Ondrej Likar, and John Krave for Defendant and Respondent.

John and Leslee Sarno[1] appeal from the trial court's entry of judgment after it granted summary judgment for Kaiser Foundation Health Plan, Inc. (Kaiser) on their causes of action for invasion of privacy and negligence. The Sarnos argue Kaiser's motion was procedurally defective, its evidence was inadmissible, and there were material issues of fact. None of their contentions have merit, and we affirm the judgment.

FACTS

This case has previously been to this court. (*Sarno v. Fite* (July 18, 2019, G056456) [nonpub. opn.]; *Sarno v. Bailes* (July 18, 2019, G056460) [nonpub. opn.].)[2] We provide a brief recitation of the facts as relevant to the limited issue in this appeal.

*I. Substantive Facts*

The Sarnos were Disneyland annual passholders who visited the park frequently. The Sarnos formed a Disneyland social club called the "Main Street Fire Station 55 Social Club" (MSF).[3] In late 2015, the Sarnos decided to have MSF sponsor a fundraising walk at Disneyland on September 11, 2016.

In Spring 2016, John communicated with a minor female on social media. John and Leslee had previously met the minor and her mother at the park. The minor initiated the first contact through the MSF social media account about a commemorative

---

[1] For sake of clarity we refer to John and Leslee individually by their first names and collectively as the Sarnos.

[2] On our own motion and for good cause, we take judicial notice of the unpublished opinions in case Nos. G056456 and G056460. (Evid. Code, § 452.)

[3] People form social clubs based on a Disneyland character, attraction, or theme and meet at Disneyland to socialize. Club members communicate through social media platforms. There are hundreds of social clubs at Disneyland.

coin.  But later, John sent the minor a message that "'we'" would be in the park and seeing her.  The minor's mother told John not to contact her daughter.

Jakob Fite was the president of another Disneyland social club, the White Rabbits (WR).  John alleged Fite tried to extort money from him for WR to provide security for the MSF walk.  John refused to pay.

The month before the MSF walk, John and Fite communicated via messaging.  Fite had learned John contacted the minor and threatened to insinuate he was a pedophile to Leslee and others.  John alleged that the day of the walk, he and Fite, who was with four other WR clad men, got into an altercation where Fite threatened to "'destroy his reputation'" and "'bury [him].'"

During this time, Nicole Navarro was a Kaiser pharmacy technician.  Navarro was also a Disneyland enthusiast who wanted to join WR.  Fite asked Navarro to obtain John's medical records from Kaiser.

On September 22, 2016, Navarro accessed John's and Leslee's Kaiser medical records to give to Fite.  The Sarnos were Kaiser members but had never met Navarro.

In September and October 2016, Fite hosted podcasts where he disclosed the Sarnos' medical information including their infertility, surgeries, medical treatments, diagnoses, and prescriptions.  The Sarnos' friend told them that Fite was reading their medical records on podcasts.  The Sarnos listened to the podcasts.

In March 2017, Leslee wrote to Kaiser about the breach.  Navarro was on medical leave and did not work from the end of March 2017 to April 2018, when she left; she never returned to work for Kaiser.  Kaiser never interviewed Navarro about the breach.

In May 2017, Kaiser's compliance and privacy officer notified Leslee that a Kaiser employee improperly viewed her medical records out of "curiosity."  Kaiser did not notify John.

## II. Procedural Facts

As relevant here, the Sarnos' second amended complaint (SAC) alleged causes of action for invasion of privacy and negligence against Kaiser.[4] In both causes of action, the Sarnos stated the following: "During her employment with Kaiser, Navarro received notice of policies pertaining to maintaining and preserving the confidentiality of patient's medical information. Navarro also received training in how to access that information. Navarro had actual knowledge regarding authorized and prohibited use of patient confidential information." The Sarnos alleged Navarro improperly accessed their medical records and disclosed those records to Fite in violation of the Confidentiality of Medical Information Act (Civ. Code, § 56 et seq.), and Kaiser "minimized" and "excused" her conduct. They also alleged Kaiser "fail[ed] to monitor access to its system" so Navarro could improperly access their medical records (Civ. Code, § 56.101, subd. (a)). In both causes of action, the Sarnos contended Kaiser was liable pursuant to the doctrine of respondeat superior. The Sarnos sought compensatory and punitive damages. Kaiser filed an answer.

Kaiser filed a motion for summary judgment or, alternatively, summary adjudication supported by declarations from Kaiser employee Tonia Warrior and expert Marti Arvin. In her declaration, Arvin recounted her 30 years of experience in the healthcare industry. Arvin explained she was aware of federal and state confidentiality rules. She detailed the case-related documents she reviewed, including Navarro's training history. She opined Kaiser's confidentiality procedures, polices, and training met the applicable standard of care.

Shortly after the Sarnos filed the SAC, they requested copies of the records Navarro accessed. The parties struggled to fashion a stipulation to produce documents to

---

[4] The Sarnos also sued Fite, Navarro, 27 individual defendants, and Disneyland for various causes of action. In their opening brief, the Sarnos state they settled their claims against Disneyland.

some defendants and not others.  In June 2021, the parties reached a stipulation.  The following month, the Sarnos filed an opposition supported by a plethora of evidence but no expert declaration.

In its tentative ruling, the trial court granted Kaiser's motion for summary judgment.  Relying on *Perry v. County of Fresno* (2013) 215 Cal.App.4th 94, 101 (*Perry*), the court held Kaiser was not vicariously liable for Navarro's conduct under the doctrine of respondeat superior.  The court noted the Sarnos neither contended Kaiser was negligent in hiring, training, supervising, or retaining Navarro nor presented an expert declaration.  The court opined it could rule on the motion without ruling on the evidentiary objections.  After hearing argument, the court adopted the tentative as its final ruling.

The Sarnos filed a motion for reconsideration.  In December 2021, the parties submitted the stipulated protection order to the court, and Judge Zeltzer signed the order.

Kaiser filed opposition to the Sarnos' motion for reconsideration.  The Sarnos filed a reply.

The trial court denied the Sarnos' motion because the Sarnos did not offer new or different facts or circumstances.  The court entered judgment in favor of Kaiser and against the Sarnos.

DISCUSSION

I.  *Procedural Arguments*

A.  *Separate Statement Deficient*

The Sarnos argue Kaiser's motion for summary judgment was procedurally defective because the separate statement consolidated allegations common to both the third and seventh causes of action.  We disagree.

Code of Civil Procedure section 437c, subdivision (b)(1), provides in relevant part as follows:  "The supporting papers shall include a separate statement

5

setting forth plainly and concisely all material facts that the moving party contends are undisputed. Each of the material facts stated shall be followed by a reference to the supporting evidence. The failure to comply with this requirement of a separate statement may in the court's discretion constitute a sufficient ground for denying the motion." California Rules of Court, rule 3.1350(d) states the following: "(1) The Separate Statement of Undisputed Material Facts in support of a motion must separately identify: [¶] (A) Each cause of action, claim for damages, issue of duty, or affirmative defense that facts is the subject of the motion; and [¶] (B) Each supporting material fact claimed to be without dispute with respect to the cause of action, claim for damages, issue of duty, or affirmative defense that is the subject of the motion."

Here, Kaiser's separate statement consolidated factual allegations common to both the third and seventh causes of action. Code of Civil Procedure section 437c, subdivision (b)(1), gives the trial court the authority to deny a defective motion, but it does not require the court to do so. There were only two causes of action, and the factual allegations were straightforward and common to both. That Kaiser consolidated redundant allegations to avoid duplication was not a fatal flaw requiring the court to deny the motion. Kaiser substantially complied with the applicable statute and rule of court by filing a separate statement that listed all undisputed material facts and evidence supporting each fact. The court did not object to the separate statement's form and cited to the relevant evidence in its order. Therefore, the separate statement served its purpose. (*Security Pacific Nat. Bank v. Bradley* (1992) 4 Cal.App.4th 89, 93-94 [purpose of separate statement and separate responsive statement to afford due process to opposing party and assist court in understanding issues and locating relevant evidence].) The Sarnos fail to articulate how the form of separate statement impaired their ability to respond to the motion or caused the court to misunderstand the allegations at issue.

The Sarnos reliance on *Whitehead v. Habig* (2008) 163 Cal.App.4th 896, 902, is misplaced because in that case the moving party did not include citations to any

6

evidence. Kaiser's separate statement was not so defective that it required the court to deny Kaiser's motion for summary judgment.

B. *Inadmissible Evidence*

The Sarnos contend the trial court relied on inadmissible evidence in granting Kaiser's motion for summary judgment because Arvin's declaration included inadmissible hearsay, she lacked personal knowledge, and she could not authenticate a document. Not so.

As noted, the trial court stated it could decide the motion without ruling on the parties' evidentiary objections, citing to *Reid v. Google* (2010) 50 Cal.4th 512 (*Reid*). "The trial court must rule expressly" on properly raised evidentiary objections. (*Id.* at pp. 531-532.) If the court does not expressly admit or exclude the challenged evidence, "it is presumed that the objections have been overruled, the trial court considered the evidence in ruling on the merits of the summary judgment motion, and the objections are preserved on appeal." (*Id*. at p. 534.)

Because Arvin's declaration included inadmissible hearsay, she lacked personal knowledge, and she could not authenticate a document.

A summary judgment motion must be decided on admissible evidence. (*Brown v. Ransweiler* (2009) 171 Cal.App.4th 516, 529.) This means declarations must not include inadmissible hearsay. (*Bozzi v. Nordstrom, Inc.* (2010) 186 Cal.App.4th 755, 761.) Testimony—declarations for summary judgment—must be based on personal knowledge. (Code Civ. Proc., § 437c, subd. (d); *Bozzi, supra,* 186 Cal.App.4th at p. 761.) Documents must be properly authenticated. (*Hooked Media Group, Inc. v. Apple Inc.* (2020) 55 Cal.App.5th 323, 338.)

Relying on *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*), the Sarnos assert Arvin's declaration was based on inadmissible hearsay. In *Sanchez*, a gang expert opined defendant was a gang member based on a "STEP notice" that had been given to defendant advising he was suspected of being in a gang and statements in police reports

7

indicating he was a gang member. (*Id*. at p. 673.) The *Sanchez* court held this was improper. (*Id*. at p. 685.) The court explained that when an expert testifies about case-specific, out-of-court statements and treats those statements as true to support the expert's opinion, the statements are hearsay and must either fall within a hearsay exception or be independently proven by competent evidence. (*Ibid*.)

However, the *Sanchez* court expressly held the decision "does not affect the traditional latitude granted to experts to describe background information and knowledge in the area of his expertise." (*Sanchez, supra,* 63 Cal.4th at p. 685.) The court stated, "There is a distinction to be made between allowing an expert to describe the type or source of the matter relied upon as opposed to presenting, as fact, case-specific hearsay that does not otherwise fall under a statutory exception." (*Id*. at 686.)

The Sarnos' reliance on *Sanchez* is misplaced. In her declaration, Arvin did not relate case-specific, out-of-court statements and treat the content of those statements as true in forming her opinion—the Sarnos do not cite to any instance where she did. Arvin reviewed Kaiser's policies and trainings provided to all employees and Navarro's deposition testimony. Based on her review of these materials, she offered opinions based on her years of experience in the healthcare industry. As the *Sanchez* court noted, its decision "does not affect the traditional latitude granted to experts to describe background information and knowledge in the area of [her] expertise." (*Sanchez, supra,* 63 Cal.4th at p. 685.) Arvin's declaration did not present case-specific, out-of-court statements in violation of *Sanchez*.

The Sarnos' contention regarding authentication is not well developed. Below, they objected to exhibit 5, Kaiser's principles of responsibility, and exhibit C, Kaiser's training documents on the ground they were not authenticated. But on appeal, the Sarnos do not specify which documents they object to on this ground. They merely allege in a laundry list of objections Arvin was unable to authenticate evidence.

8

"[T]he burden [is] on the objector to renew the objections in the appellate court." (*Reid, supra,* 50 Cal.4th at p. 534.) The Sarnos did not do that here and we treat the point as forfeited. When legal argument with citation to authority is not furnished on a particular point, we may treat the point as forfeited and pass it without consideration. (*Martine v. Heavenly Valley Limited Partnership* (2018) 27 Cal.App.5th 715, 728 [court not required to serve as the appellants' backup counsel and supply arguments for them].)

The Sarnos raise other objections to Arvin's declaration and her deposition testimony, including that she lacked personal knowledge of Navarro's training history. In her declaration, Arvin stated she reviewed Navarro's training history. The Sarnos' objections go to the weight of Arvin's testimony, not its admissibility. The way to dispute Arvin's opinions was to file their own expert declaration. The Sarnos did not do that. The Sarnos have not carried their burden of establishing Arvin's declaration was inadmissible.

As we explain below, Arvin's declaration supported the trial court's granting of Kaiser's motion for summary judgment. Thus, we need not address the Sarnos' contentions concerning Warrior's declaration.

II. *Substantive Arguments*

The Sarnos argue the trial court erred by granting Kaiser's motion for summary judgment on their invasion of privacy and negligence causes of action because there were material issues of triable fact. Again, we disagree.

A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id.*, subd. (p)(2).) If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact. (*Id.*, subd. (p)(2).) A triable issue of material fact exists if the evidence would allow a

9

reasonable trier of fact to find the fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)  The materiality of a disputed fact is determined by the theories of liability alleged in the complaint.  (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1250, 1254 (*Conroy*).)

"We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent.  [Citation.]  We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons.  [Citation.]" (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 637.)

## A. *Invasion of Privacy*

Civil Code section 56.10 prohibits disclosure of medical information except when expressly permitted under the act (see Civ. Code, § 56.36, subd. (b) [action for damages]).  An invasion of privacy requires "intrusion into a private place, conversation, or matter, in a manner highly offensive to a reasonable person." (*Mezger v. Bick* (2021) 66 Cal.App.5th 76, 86.)

"Under the respondeat superior doctrine, an employer is liable for the torts of its employees committed within the scope of the employment.  [Citation.]  An employee's willful, malicious and even criminal torts may fall within the scope of his or her employment, even though the employer did not authorize the employee to commit crimes or intentional torts.  [Citation.]  Although the question of whether a tort was committed within the scope of employment is ordinarily one of fact, it becomes one of law where the undisputed facts would not support an inference that the employee was acting within the scope of employment.  [Citation.]  The burden is on the plaintiff to prove that the employee's tortious conduct was committed within the scope of employment.  [Citation.]" (*Perry, supra,* 215 Cal.App.4th at p. 101.)

10

"The connection or causal nexus required for respondeat superior liability is the tort must have been engendered by or arise from the work. [Citation.] The required connection has been described as (1) 'the incident leading to injury must be an "outgrowth" of the employment'; (2) the risk of tortious injury is ""'inherent in the working environment'""; (3) the risk of tortious injury is ""'typical of or broadly incidental to the enterprise [the employer] has undertaken'"" or; (4) 'the tort was, in a general way, foreseeable from the employee's duties.' [Citation.] [¶] 'These various terms have been condensed into a two-prong disjunctive test. [Citation.] The conduct of an employee falls within the scope of his or her employment if the conduct either (1) is required by or incidental to the employee's duties, or (2) it is reasonably foreseeable in light of the employer's business.' [Citation.]" (*Crouch v. Trinity Christian Center of Santa Ana, Inc.* (2019) 39 Cal.App.5th 995, 1015.)[5]

*Perry, supra,* 215 Cal.App.4th 94, in instructive. In that case, an off-duty correctional officer got into a car accident in his own car with the plaintiff. (*Id.* at p. 98.) Plaintiff was injured and sued the officer. (*Ibid.*) The officer used jail computers to find inmates' mailing addresses. (*Ibid.*) He wrote threatening letters to inmates in plaintiff's name hoping inmates would intimidate the plaintiff to drop the lawsuit. (*Ibid.*) The *Perry* court found no causal nexus between the officer's employer and his letter writing scheme because the officer's dispute with plaintiff "had absolutely no connection to [the officer's] employment." (*Id.* at p. 102.) The court stated the car accident and resulting lawsuit "purely personal" and "not work related." (*Ibid.*) The court explained that

---

[5] The Sarnos also cite to *Alma W. v. Oakland Unified School Dist.* (1981) 123 Cal.App.3d 133, 139, for the following proposition: "The fact that an employee is not engaged in the ultimate object of his employment at the time of his wrongful act does not preclude attribution of liability to an employer. [Citation.]" They cherry pick that sentence and fail to include the rest of the paragraph, which states as follows: "However, that is not to say, that employers are strictly liable for all actions of their employees during working hours. If an employee substantially deviates from his duties for personal purposes, the employer is not vicariously liable for the employee's actions." (*Ibid.*)

11

although the officer had access to inmates' personal information through his work, "respondeat superior requires more than such 'but for' causation." (*Ibid*.) The court opined the officer's fake letters to intimidate plaintiff into dropping the non-work-related lawsuit was not an outgrowth of his employment. (*Ibid*.) The *Perry* court concluded the officer's wrongful conduct was outside the scope of his employment. (*Ibid*.)

Here, like in *Perry*, Navarro's attempt to ingratiate herself with Fite in an attempt to join his Disneyland social club by accessing the Sarnos' medical records had no material connection to Navarro's employment. The underlying events, Fite's vendetta against the Sarnos and Navarro's effort to get in Fite's good graces, were not work related. While Navarro's employment as a pharmacy technician gave her access to the information she needed to win favor with Fite, "respondeat superior requires more than 'but for' causation." (*Perry, supra,* 215 Cal.App.4th at p. 102.) Navarro accessed the Sarnos' medical records for her and her husband's personal gain—to join WR. Her motivation was not generated by, or an outgrowth of, workplace responsibilities, conditions or events. Instead, her undertaking was purely personal. Contrary to the Sarnos' claim, it was not foreseeable Navarro would access and release their medical records to harass and humiliate them in the context of a Disneyland social club dispute to ingratiate herself with one of the club's leaders in an effort to join the club. No, her conduct was "'unusual [and] startling.'" (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 302 [hospital not vicariously liable under respondeat superior for employee's sexual battery of patient].)

Additionally, the three policy justifications for the respondeat superior doctrine do not support holding Kaiser vicariously liable. The public policy justifications for imposing respondeat superior liability are the following: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and

12

(3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury. [Citation.]" (*Perry, supra,* 215 Cal.App.4th at p. 103.)

Although vicarious liability would give greater assurance of compensation for the Sarnos, it would not act to prevent recurrence of the tortious conduct. Navarro ostensibly needed access to the information contained in Kaiser's computer system to do her job. Kaiser already had policies in place that prohibit the improper access and dissemination of this information and subject an employee to termination for misuse of the information. And Navarro is subject to civil liability for her conduct. (*Montague v. AMN Healthcare, Inc.* (2014) 223 Cal.App.4th 1515, 1524 [civil liability deterrent for aberrant conduct].) The third policy consideration—ensuring the Sarnos' losses will be equitably borne by those who benefit from the enterprise—is merely another way of asking "'whether the employee's conduct was "so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business."'" [Citation.]" (*Perry, supra,* 215 Cal.App.4th at p. 104.) Again, Navarro's conduct was entirely personal and, in the context of her job, unusual and startling. (*Ibid*.) Kaiser derived no benefit from Navarro's conduct and it would be inequitable to shift the loss to Kaiser. (*Montague, supra,* 223 Cal.App.4th at p. 1524.)

The Sarnos reliance on *White v. County of Orange* (1985) 166 Cal.App.3d 566, is misplaced. In that case, the court applied an "incident to . . . duties" test (*id*. at p. 571) where a deputy sheriff threatened to rape and murder a motorist (*id*. at p. 568). The court held the county could be liable because a peace officer is entrusted with great authority and his authority is "incidental to his duties." (*Id*. at p. 571.) The court added the employer/government must be liable for conduct done during the exercise of that authority. (*Ibid*.) *White* is of no help to the Sarnos because Kaiser is not a government entity, Navarro is not a peace officer, and her improper access and release of medical records was not incidental to her duties.

13

Thus, Navarro's wrongful conduct was outside the scope of her employment, and Kaiser is not vicariously liable for invasion of privacy under the doctrine of respondeat superior. The court properly granted summary judgment for Kaiser on the Sarnos' third cause of action for invasion of privacy.

B. *Negligence*

Negligence requires duty, breach, causation, and damages. (*Achay v. Huntington Beach Union High School Dist.* (2022) 80 Cal.App.5th 528, 535.) Civil Code section 56.101, subdivision (a), requires health care providers who maintain medical information to preserve the confidentiality of that information and subjects them to liability for negligent maintenance (Civ. Code, § 56.36, subd. (b) [action for damages]).

In their SAC, the Sarnos allege Kaiser was negligent under the doctrine of respondeat superior and by breaching its duty to monitor access to its computer system so that Navarro improperly accessed their medical records. As we explain above, Kaiser is not liable under the doctrine of respondeat superior because Navarro's conduct was not incidental to her employment and was not reasonably foreseeable in light of Kaiser's business.

With respect to the Sarnos' claim Kaiser breached its duty to monitor its computer system to ensure an employee does not improperly access patient medical records, there was no material issue of disputed fact. In her declaration, Arvin stated she was familiar with all federal and state confidentiality rules and Kaiser's internal policies and procedures. Arvin opined Kaiser's internal privacy policies and procedures for protecting patient's protected health information met the standard of care.

The Sarnos submitted no meaningful evidence to contradict the showing Kaiser was not negligent. They also fail to point to any such evidence on appeal. Their primary argument is that it is within the common knowledge of a lay person to determine if the standard of care was met with respect to the disclosure of medical records and they did not need to submit an expert opinion to contradict Arvin's declaration. This was a

14

fatal omission in this particular case. (*Vigil v. Muir Medical Group IPA, Inc.* (2022) 84 Cal.App.5th 197, 210 ["'What is required is pleading, and ultimately proving, that the confidential nature of the plaintiff's medical information was breached as a result of the health care provider's negligence'"].) As the trial court noted, the Sarnos did not present expert testimony "Kaiser negligently hired, trained, supervised, or retained Navarro."

In their opening brief, the Sarnos assert the following: "Kaiser knew that Navarro had a history of workplace discipline." The Sarnos cite to a declaration from a private investigator's March 2018 interview of T.C., who associated with WR members at the time of these events. The declaration does not support the conclusion "Kaiser knew that Navarro had a history of workplace discipline." It supports the proposition that over one year after Navarro improperly accessed the Sarnos medical records, T.C. stated Kaiser dismissed Navarro for "her behavior." It does not support the proposition that when Kaiser hired Navarro it was aware she previously suffered workplace discipline. In any event, as the trial court noted, the Sarnos did not allege Kaiser was negligent in hiring Navarro.

Based on this evidence, there was no disputed fact to support a direct claim of negligence against Kaiser. The trial court properly granted summary judgment for Kaiser on the Sarnos' seventh cause of action for negligence.

*C. Ratification*

The Sarnos contend there was a triable issue of material fact on whether Kaiser ratified Navarro's conduct and was thus liable for punitive damages. The Sarnos failed their burden.

Civil Code section 2339 states, "A principal is responsible for no other wrongs committed by his agent . . . , unless he has authorized or *ratified* them, even though they are committed while the agent is engaged in his service." (Italics added.) "'Ratification is the voluntary election by a person to adopt in some manner as his own an act which was purportedly done on his behalf by another person, the effect of which,

15

as to some or all persons, is to treat the act as if originally authorized by him. [Citations.] A purported agent's act may be adopted expressly or it may be adopted by implication based on conduct of the purported principal from which an intention to consent to or adopt the act may be fairly inferred, including conduct which is "inconsistent with any reasonable intention on his part, other than that he intended approving and adopting it." [Citations.]' [Citation.]" (*Fretland v. County of Humboldt* (1999) 69 Cal.App.4th 1478, 1490-1491.)

Civil Code section 3294, subdivision (a), authorizes punitive damages for a defendant's oppression, fraud, or malice. Civil Code section 3294, subdivision (b), provides as follows: "An employer shall not be liable for damages pursuant to subdivision (a), based upon acts of an employee of the employer, unless the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation." The materiality of a disputed fact is determined by the pleadings. (*Conroy, supra,* 45 Cal.4th at pp. 1250, 1254.)

Here, the Sarnos alleged two causes of action against Kaiser, invasion of privacy (third) and negligence (seventh). Although the negligence cause of action does not include a request for punitive damages, the invasion of privacy cause of action does. But the invasion of privacy cause of action does not include particular facts alleging Kaiser ratified Navarro's conduct. This cause of action does allege Kaiser minimized and excused Navarro's conduct, but it does not allege who minimized and excused Navarro's conduct or how he or she did so.

16

"'There is no cause of action for punitive damages. Punitive or exemplary damages are remedies available to a party who can plead and prove the facts and circumstances [set forth in Civil Code section 3294] . . . . "Punitive damages are merely incident to a cause of action, and can never constitute the basis thereof." [Citation.]' [Citation.]" (*Grieves v. Superior Court* (1984) 157 Cal.App.3d 159, 163-164, fn. omitted; see CACI No. 3710.)

Allegations regarding ratification must be pled with particularity. That means "the plaintiff must set forth facts in his complaint sufficiently detailed and specific to support an inference that each of the statutory elements of liability is satisfied. General allegations are regarded as inadequate. [Citations.]" (*Mittenhuber v. City of Redondo Beach* (1983) 142 Cal.App.3d 1, 5; see *Covenant Care, Inc. v. Superior Court* (2004) 32 Cal.4th 771, 790 [general rule statutory causes of action must be pleaded with particularity].)

Because exemplary damages ""'"are merely incident to a cause of action and can never constitute [a] basis thereof"'"" (*Berry v. Frazier* (2023) 90 Cal.App.5th 1258, 1276), the Sarnos should have pleaded their request for Civil Code section 3294 exemplary damages in connection with the invasion of privacy cause of action using section 3294s "'statutory language . . . plus sufficient facts'" (*Berry, supra,* at p. 1276) to support their allegation that Kaiser's officer's, director's, or managing agent's conduct ratified Navarro's conduct.

Nevertheless, Kaiser moved for summary adjudication on the issue of punitive damages, and the issue was before the trial court, although it did not expressly rule on it. There was no triable issue of material fact to support the Sarnos' request for punitive damages under the theory of ratification. The only witnesses identified in the demand for punitive damages were Navarro and Kaiser's compliance and privacy officer who sent Leslee the letter notifying her of the breach. The Sarnos failed to meet their burden to establish any officer, director, or managing agent of Kaiser ratified Navarro's

17

conduct, which is a critical and necessary element of their demand for punitive damages under Civil Code section 3294. (*Cruz v. HomeBase* (2000) 83 Cal.App.4th 160, 167; *Morgan v. J-M Manufacturing Co., Inc.* (2021) 60 Cal.App.5th 1078, 1091 ["That the defendant is a large company does not relax a plaintiff's burden of proof"].) Contrary to the Sarnos' claim, this was not a question for the jury. Punitive damages are only incident to a cause of action, and there was no triable issue of material fact concerning ratification.

The Sarnos assert Kaiser was unaware of the breach until Leslee notified Kaiser, Kaiser's letter to Leslee stated the breach was out of "curiosity," Kaiser did not send a letter to John notifying him of the breach, Kaiser did not interview Navarro, and Kaiser did not terminate Navarro. None of these assertions establish a triable issue of fact that an officer, director, or managing agent of Kaiser ratified Navarro's conduct.

The Sarnos contend they were unable to conduct sufficient discovery, but they never requested a continuance of the hearing to allow more time to conduct discovery and depose witnesses. The time to make such a request expired before the hearing and these arguments are forfeited on this appeal. (Code of Civ. Proc., § 437c, subdivision (h); *Roman v. BRE Properties, Inc.* (2015) 237 Cal.App.4th 1040, 1056.)

Because of our conclusion the trial court properly granted Kaiser's motion for summary judgment, we need not address the Sarnos' contention it was entitled to attorney fees.

18

DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs on appeal.


O'LEARY, P. J.

WE CONCUR:


SANCHEZ, J.


DELANEY, J.

19